►Seldeh, J,
 

 The opinion delivered by the Supreme Court, at general term, shows that the new trial, in this case, was not granted upon any disputed question of fact, but for an erroneous legal inference, drawn by the referee, from facts clearly established. The principal question involved in the case, therefore, is open for the examination of this court.
 

 It is very clear that the plaintiffs did not make out, upon the trial, the precise cause of action stated in their complaint: because that assumes that a contract, by the defendants, to let the work in question to the plaintiffs, was in all respects perfected, and the breach alleged, is, that the defendants refused to permit the plaintiffs to go on with the work.' But, as both the advertisement on the part of the company, and the proposition made by the plaintiffs, expressly contemplated that the contract for the work should be reduced to writing and executed by the parties, until that was done, the contract to let the work cannot be said to have been consummated. In the aspect, therefore, in which the plaintiffs have presented their case, they clearly have no claim. The Supreme Court was, no doubt, right in holding that the defendants had never entered into an obligatory contract to let the work upon section 67 to the plaintiffs : because it was an essential part of the agreement between the parties, that the evidence of their contract should not rest in paroi, but should be in writing; and this became, therefore, a necessary preliminary to the completion of the contract. Hence the defendants were guilty of no violation of contract, in refusing to permit the plaintiffs to do the work.
 

 It does not follow, however, from this, that no contract was made which was binding upon the defendants. A contract to make and execute a certain written agreement, the terms of
 
 *309
 
 which are specific, and mutually understood, is, in all respects, as valid and obligatory, where no statutory objection interposes, as the written contract itself would be, if executed. If, there» fore, it should appear, from the evidence, that the minds of the parties had met; that a proposition for a contract had been made by one party and accepted by the other; that the terms of this contract, were, in all respects, definitely understood and agreed upon, and that a part of the mutual understanding, was, that a written contract, embodying those terms, should be drawn and executed by the respective parties, this is an obligatory contract, which neither party is at liberty to refuse to perform.
 

 Such a case cannot be distinguished from that of an agreement to execute a lease. If two parties negotiate for a lease of certain premises, and they agree upon the terms and conditions of the lease, and that a written lease shall be drawn and executed, embracing those terms, this» is not a lease, but it is a contract, which, whenever the statute of frauds does not interfere to prevent, can be enforced; and which the courts will compel the parties specifically to perform. The books are full of such cases, and it can hardly be necessary to refer to them at length. It is required, in such cases, that the preliminary agreement to execute the lease, should, itself, be in writing; but this is merely to avoid the effect of the statute of frauds. Wherever there is anything to take the case out of the operation of the statute, the agreement, although by paroi, will be enforced.
 

 Thus; it is said in
 
 Seagood
 
 v.
 
 Meale
 
 (Prec. in Ch., 560 ), “ So, where a man, on promise of a lease to be made to him, lays out money in improvements, he shall oblige the lessor after-wards to execute the lease;” the laying out of money in improvements being held, in such a case, to prevent the operation
 
 of
 
 the statute. The cases of
 
 Powell
 
 v.
 
 Dillon
 
 (2 Ball & Beatty, 416), and
 
 Verlander
 
 v.
 
 Codd
 
 (1 Turn. & Russ., 352), are cases where the agreements to execute the lease were by paroi, but there was a brief note in each case, signed by the lessor, which the courts held sufficient to take the cases out of the statute. These, it is true, were bills in Chancery, to compel a specific
 
 *310
 
 performance; but the case of
 
 Shippey
 
 v.
 
 Derrison
 
 (5 Esp., 190), which was sustained, was an action on the case to recover dama- • ges for a refusal, by the tenant, to take a lease, pursuant to a preliminary contract to that effect.
 

 To determine whether what was done in this case, amounted to an agreement by both parties to enter into a written contract, upon certain definite terms, it will be necessary to recapitulate, with some precision; the evidence in the case. On the 19th of June, 1850, the defendants inserted in the newspapers of the day, an advertisement inviting proposals for doing the grading upon certain sections of their road, including number 67, and containing the following clauses: “ Contractors, whose bids may be accepted, will be required to
 
 enter into
 
 contract, and commence the work without delay.” This was signed by the chief engineer of the company.
 

 The plaintiffs, pursuant to this invitation, delivered to the defendants, on or about the 1st of July, 1850, a written proposition for section 67, among others, embracing a table minutely specifying the various kinds of work, and the prices for each, and containing the following clause: “ On the acceptance of this proposal for all or either of the said sections," we hereby bind ourselves
 
 to enter into written contracts,
 
 and give the required bond and surety, to perform the said work for the consideration above mentioned.”
 

 On the 6th of July, 1850, the defendants gave notice to the plaintiffs, that they accepted their proposition for number 67, and that they were required to come and execute the contracts immediately. On the 15th of the same month, Frederick Pratt, Jr., one of the plaintiffs, called upon Mr. Jarvis, the resident engineer, whose business it was to attend to the execution of the contract. Mr. Jarvis thereupon took printed blanks, prepared for the purpose by the company, and filled them up for section Mo. 67, pursuant to the terms of the proposition which had been accepted; and these contracts were signed by the plaintiff, Frederick Pratt, Jr., and witnessed by Mr. Jarvis. They * were then taken by Frederick Pratt, Jr., by arrangement with
 
 *311
 
 Mr. Jarvis, for the purpose of procuring the signature of the other plaintiff.
 

 Now the question is, whether the inevitable inference from these facts, is not that the defendants impliedly undertook! to execute, on their part, the agreement thus prepared by their engineer. This question, as it seems to me, admits of but one answer. I cannot doubt that if the plaintiffs had both been present when the contract was drawn, and had both affixed their signatures to the writing, as prepared by him, the defendants would have been bound to execute, on their part, and liable to an action if they refused.
 

 Indeed, the defendants’ counsel does not deny that an action will lie for refusing to enter into a written contract, under such circumstances; but he insists that the defendants were j ustified in their refusal to execute, first, by the delay on the part of the plaintiffs in returning the contract duly .executed by them: And secondly, by the violation, by the plaintiffs, of the provision in the agreement against sub-letting the work.
 

 In regard to the first of these grounds, the referee found that the engineer, Jarvis, had authority to extend the time for the execution of the contract by the plaintiffs; that he did so extend it; and that the contract was duly executed by the plaintiffs, and tendered to the defendants within such extended time. The Supreme Court overruled the conclusion of the referee, as to the authority of Jarvis, which was a mere legal inference from his position and employment, but did not disturb his finding, upon the question of fact, as to the actual extension of time, and the execution and return of the contract within the time thus granted.
 

 The question upon this point then is, whether Jarvis had authority to extend the time. He was the resident engineer upon that part of the defendants’ road which embraced section 67, to which the plaintiffs’ contract related, and was charged, according to the testimony of the chief engineer, Young, with making out the contracts, and procuring the signatures of the contractors. No precise time was fixed for the execution of ■ this contract. • Under such circumstances, it is4oubtful whether
 
 *312
 
 either party could take advantage of the lapse of time, without first calling upon the other to execute, or giving some notice that the contract, if not executed by a given time, would be abandoned.
 

 But, however this may be, when the agent employed for the express purpose of procuring the signature of one of the parties, consents to a delay, such party is, I think, justified in acting upon such consent. If the time .for the execution was fixed by the contract, the agent would have no right to enlarge it. But where no time is fixed, nor any limitation imposed upon his powers, he is necessarily clothed with a discretion as to the time. The power is incident to the duty he has to perform. It will hardly be contended that he could not, for his own convenience, or the convenience of the other party, postpone the execution for a day, or appoint some day which would be mutually convenient for the purpose.
 

 It may be said that the law requires the party to execute within a reasonable time, and that although the agent may postpone within this limit, he cannot go beyond* it. But the power of the agent cannot depend upon the reasonableness of its exercise. If he has a discretionary power to postpone for a day, there clearly can be no limit to this discretion, so long as it is exercised in good faith. My conclusion, therefore, is, that the engineer, Jarvis, in consenting that one of the plaintiffs might take the contract, for the purpose of procuring the signature of the other, and return it within the time named, did not exceed the authority with which he was clothed by the very nature of his employment.
 

 The second ground upon which the counsel contends that the defendants were warranted in refusing to execute the contract, is, that the plaintiffs had sub-let the work upon section 67, to the De Graws, contrary to an express provision of the written contract, upon which they insist. It is perhaps a sufficient answer to this position, to say, that the referee has not found the facts upon which it purports to rest. If, however, this court should look into the evidence on that subject, it would not find the fact of sub-letting established. The proof goes no
 
 *313
 
 further than- to show that some writing was executed between the plaintiffs and the De G-raws, on or about the 15th of July, 1850, but the writing was not produced, nor ,were its contents proved. The certificate of the chief engineer, upon which the resolution of the board of directors, abrogating the contract with the plaintiffs, was based, was entirely without force. That provision of the contract which authorized the engineer to certify to the directors any delinquency on the part of the contractors, could not take effect until the contract itself was executed, so as to become obligatory upon the parties; which, as we have seen, was never done. On neither of the grounds taken by the defendants, therefore, were they justified in abrogating or refirsing to execute the written agreement.
 

 But it may be said, that a claim for damagés, for refusing to enter into the contract, is a different cause of action from that set up in the complaint, and hence the plaintiffs cannot recover without an amendment, which it is now too late to make. This is, no doubt, a case, where, prior to the Code, the plaintiffs would have been put to the delay and expense of a new action, notwithstanding the whole merits of the case had been tried in the pending suit. A prominent object of the reforms introduced by the Code, was, to prevent parties from being driven to the necessity of prosecuting a second action, upon a mere question of form. Section 173 of the Code provides that “ the court may, before or
 
 after
 
 judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process, or proceeding, by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or -a mistake in any other respect: Or by inserting other allegations material to the case: Or where the amendment does not change, substantially, the claim or defence, by conforming the pleading, or proceeding, to the facts proved.”
 

 Under this section, it was held in the case of
 
 Bate
 
 v.
 
 Graham
 
 (1 Kern., 237), that where the complaint omitted to aver a necessary fact, which fact appeared from the answer, the defect might be supplied by amendment, even after appeal to this court, notwithstanding in that' case an objection had been taken
 
 *314
 
 at the trial, on' account of the omission, and overruled. The power of this . court to amend, in furtherance of justice, being thus established, a stronger case than the present, for the exercise of the power, could scarcely be presented. The cause of action stated in the complaint, and that established upon the trial, are substantially the same. If the defendants’ counsel was right in the position that the measure of damages would be different in the two cases, this would be a conclusive objection to the amendment. But it is obvious that it could make no difference in the damages, whether the defendant refused to sign the contract, or first signed, and then refused to permit it to be executed. The loss to the plaintiffs must be the same in either case. Thfe difference, therefore, between the complaint as it is, and as it should be, being merely formal, and not affecting, in any degree, the merits of the case, the pleadings should, I think, be conformed, pursuant to the Code, to the facts proved. (See also
 
 Lounsbury
 
 v. Purdy, 18 N. Y., 515.)
 

 The defendants have no reason to complain of the rule of damages adopted by the referee, it being quite as favorable to them as the law and facts of the case would warrant. The judgment, at general term, should be reversed, and that of the special term affirmed.
 

 Comstock, Ch. J., Welles and Bacon, Js., concurred; Denio, J., coiicurred in the result on the ground that there was a valid contract for the performance of the work; Davies, Clerke and Wright, Js., were for affirmance.
 

 Judgment at general term reversed, and that on referee’s report affirmed.