## GRAMM v. STERLING.

LANDLORD AND TENANT — EVIDENCE — APPEAL AND ERROR — COSTS.

1. The evidence in the case reviewed and held insufficient to show a contract to lease for one year.
2. An appellant is not entitled to the reversal of a judgment because it is more favorable to him than the case made in the trial court justifies.
3. Where there is not reasonable cause for the proceedings in error a reasonable attorney fee will be allowed defendant in error.

[Decided December 4, 1899.]

ERROR to the District Court, Albany County, HON. CHARLES W. BRAMEL, Judge.

The material facts are stated in the opinion.

*N. E. Corthell*, for plaintiff in error.

Where the evidence is conflicting, the court should examine it to see if the legal effect thereof has been properly declared. (48 Pac., 460, (Kan.).) Where the facts are undisputed, and no testimony to support the verdict, the appellate court will vacate it. (Sullivan v. Board, 47 Pac., 165; Eastman v. Gurrey, 49 id., 310; Mc Afee v. Robertson, 41 Tex., 355; Rathbone v. Stanton, 6 Barb., 141; R. R. Co. v. Hause; 1 Wyo., 33; Moyle v. Hocking, 51 Pac., 533; Pratt v. Foots, 9 N. Y., 463; 5 Colo. App., 203.) Where the plaintiff is awarded a less sum than he is entitled to, if he is entitled to recover at all, the finding will be set aside. (52 Minn., 53; 28 Neb., 301; 40 id., 274; 36 S. W., 132.)

It having been shown that a contract was made, the presumption is that it continued until the contrary appears. (Hood v. Smiley, 5 Wyo., 70.)

*C. P. Arnold*, for defendant in error.

A contract was not proved. Where the parties make as a condition precedent, that the agreement shall be reduced to writing, there will be no contract until that is done. (19 Johns., 212; 53 How. Pr., 217; 121 Mass., 320; 41 O. St., 339; 10 Nev., 125; 9 Mich., 493; 14 Wis., 630.)

Plaintiff had judgment for a greater amount than he was entitled to, and he can not complain.

KNIGHT, JUSTICE.

Otto Gramm, the plaintiff in error, brought suit against Roland Blackburn before a justice of the peace to recover on account of one year's lease of the certain building and grounds known as "Sutphin Coal Yard," from July 15, 1894, to July 15, 1895, at $15 per month, amounting to $180, less the sum of $42.80 admitted by said Gramm to be due said Blackburn on account of certain nursery goods furnished Gramm by Blackburn. Blackburn appeared, denied the claim of Gramm as aforesaid, and filed a counterclaim of $52.80, the item of account being the same as allowed by said Gramm, with the additional amount of $10 for one pair of shafts. Gramm denied the additional claim of $10, and upon the issues so made, on December 3, 1895, trial was had, both parties appearing, and each gave evidence. The justice found for the plaintiff, Gramm, and gave judgment against Blackburn for the sum of $22.20, and $11.50, costs of suit.

From the judgment so recovered, and in his favor, plaintiff, Gramm, appealed to the district court; and pending such appeal, or its determination, Blackburn was adjudged insane, and James Sterling was appointed his guardian, and substituted as defendant in the further proceedings to be had in this case. Subsequently a trial de novo was had before the district court (a trial by jury having been waived), and after hearing the evidence presented by plaintiff, Gramm (the defendant introducing none), the court found as follows: "And the court, being

fully advised in the premises, finds that there is due from the said defendant to the said plaintiff the sum of $22.20, together with interest on said sum from the 3d day of December, 1895,— being the amount found due, and for which judgment was rendered by the justice of the peace, from whose judgment plaintiff appeals to this court,— together with costs in said justice court, taxed at $11.50. And the court further finds that the said plaintiff pay the costs of this appeal, including a fee of ten dollars to defendant's attorney."

And said court gave judgment in accordance with such finding, and from that judgment the plaintiff comes to this court on errors claimed, being three in number, and as follows: "Because of error in assessment of the amount of recovery, the same being too small; because the said finding, decision, and judgment are not sustained by sufficient evidence, and are against the weight of the evidence; and because the said finding, decision, and judgment, are contrary to law." It will be noticed, from the foregoing statement of facts, that after the first trial of the case before the justice of the peace the defendant became disqualified from again testifying, and that, by action of law, upon the trial de novo on appeal the court was deprived of the evidence of both parties to the action, who, as far as is disclosed by the evidence presented a such trial, were the only witnesses that could have told the facts and circumstances attending the original agreement, lease, or contract, whichever it may have been; and this fact, as we shall attempt to make appear later on, becomes more important, as shown by the authorities cited by plaintiff in error.

The ground upon which plaintiff in error presents his case in this court is the second ground urged in the court below for a new trial, in substance; viz., "That the finding and judgment of the court are not supported by any evidence." And it is urged that there was sufficient evidence to sustain the allowance of the entire claim, and none to the contrary. The defendant in error admits a

34

part of plaintiff's claim as aforesaid; viz., "That the finding and judgment of the court are not supported by any evidence." But he denies that there was any evidence upon which a court could legally render any judgment for any amount in favor of said plaintiff, and claims that the judgment that was rendered having been in his favor, and defendant in error not complaining, plaintiff in error, under the circumstances, can not do so, and that, under the rules of this court, plaintiff in error should pay a reasonable attorney's fee for having made the attempt.

Plaintiff in error has in his brief given a summary of the evidence, which, with a few additions, includes all that need be considered: "On the trial in the district court the plaintiff offered three witnesses. The defendant offered no evidence. Mr. Sutphin testified that he saw Blackburn occupying the coal yard about July, 1894, and that the latter told him that he had leased the place from Mr. Gramm for a year. Mr. Crawford testified that he was in the coal business, and that he applied to Mr. Gramm for the lease of the Sutphin yard. Gramm referred him to Blackburn, who said he didn't want it; that he had leased it, but there was no contract,— no written contract; that he had thrown it up; that he was to have had a written contract from Gramm; and that, from the fact that there was no written contract, he wasn't responsible. Mr. Crawford further testified that he had previously seen Mr. Blackburn occupying the place. Mr. Champion testified that Blackburn left with him the account for $42.80 to give to Gramm, and the witness was present at a conversation between them afterward, when Gramm presented the rent account to Blackburn, and tried to get a settlement. Gramm said to Blackburn that he had rented the place for a year at $15 per month, and had contracted to take it for that time. Blackburn replied that he never signed any such contract, and, when confronted with the direct question, 'Did you agree to take it for that time?' he replied, 'There were no papers signed.' The witness further testified that Blackburn

said the contract terminated when he gave the key to Mr. Eastman. This was the substance of the testimony, and was all the evidence offered.'' We find from the record that the evidence, while correctly stated as aforesaid, was subsequently qualified in several instances,—as, for instance, witness Sutphin's evidence was in part as follows: '' Q. Do you know anything about these yards being occupied by Mr. Blackburn, the defendant in this case, about the year 1894 ? A. Well, all I know about it is, I met him on the street one day, and he was laughing, and he said to me, 'I have leased your old yard from Mr. Gramm for a year.' I think that was just what he said.'' On cross-examination, when asked if he would state positively that Mr. Blackburn used the words that it was for one year, witness stated: '' A. I could not solemnly swear, except that it is my remembrance. Q. You wouldn't state positively, on that fact, that he used those words ? A. That is my impression,—that he said 'one year.' Q. You are not positive on that point, are you ? A. I guess I will have to say that I am not positive.'' In the cross-examination of witness Crawford, when testifying as to the conversation with defendant Blackburn, he states as follows: '' Q. Didn't he say to you that the lease was open, there being no written contract agreed upon between the parties;—that there should be a written contract ? A. I don't recollect. There was something like that. I recollect that he said. that if I wanted to lease, myself, that I could. Q. And he had thrown it up, and he was to have had a contract from Mr. Gramm, and that, from the fact that there was no written contract, he claimed that it wasn't holding him responsible, and he was not responsible ? A. Yes, sir; something to that effect. Q. Did he say that Mr. Gramm had promised to give him a written contract ? A. Yes, sir; my recollection was that Mr. Gramm was to give him a written contract or agreement.'' Witness Champion, on cross-examination, testified in part as follows: '' Q. And you were in there to hear what Mr. Blackburn had to say ? A. Yes, sir. Q. What did

Mr. Blackburn answer? A. Well, he wouldn't give any definite answer. Q. And Mr. Blackburn did not answer definitely? A. No, sir; he prevaricated. Q. Do you mean prevaricated, or evaded it? A. Prevaricated in this way: He would not make any direct answer to it. Q. Did Mr. Blackburn state he wasn't bound to take the place for a year? A. All he said was, the contract terminated when he gave the key to Mr. Eastman. That was all he said about it. Q. Who took the key at that time? Weren't those keys turned in to the bank? A. I remember there had been some talk about it at the bank. I can't tell now. I was talking with John Dawson. Q. What time did Mr. Blackburn claim that he owed rent for? A. Up to the time he gave the key to Mr. Eastman. Q. Was the key in the bank? A. I believe Mr. Eastman said he turned it in to the bank.''

There was absolutely no evidence as to when Mr. Blackburn took possession of the premises, or how long he occupied them. Witness Sutphin says that he occupied them, and that he thinks he weighed there. Witness Crawford says that in March, when he had the conversation about which he testified, Sutphin had the key, and had some things stored there; and, when asked if he knew of Mr. Blackburn's having occupied the coal yard, answered: "I have seen him there. I saw him occupying it. He was selling coal. I suppose he was occupying it," — and, when asked how long before the conversation, answered, "Well, I don't know how long it was." And that was all the evidence as to the occupancy of the premises by Blackburn.

We have attempted to enter fully into the statement of facts and the evidence in this case, because of the apparent candor with which plaintiff in error presents the same; urging that the judgment rendered should be set aside, and also that this court should order judgment to be entered for the full amount claimed. Attention is called to Fulmer v. Packard, 5 Ind. App., 574, 32 N. E., 784, and to this language: "To permit a judgment to stand

which is against evidence fairly amounting to proof without conflict would be a denial of justice." In the same paragraph the court had said: "The items of the contract were clearly proved by a number of witnesses." To the claim intimated, that occupancy of the premises, such as would authorize the enforcement of the contract claimed, was shown, without other proof, we find no warrant in the evidence; nor that the conversation, when Gramm said, "You rented this place for a year at fifteen dollars a month, and you contracted to take it for that time," and Blackburn replied, "I never signed any such contract," and Gramm continued, "Did you agree to take it for that time?" and Blackburn replied, "There were no papers signed, and I didn't sign any contract at that time," was not an assent by silence.

It matters not, if, as plaintiff in error claims, Mr. Blackburn simply labored under a mistake of law. His contract was not, as he evidently supposed, one which the law rendered void or unenforceable for want of a written memorandum. Nor did the conversation last referred to amount to proof of the terms of a contract, which all the authorities cited by plaintiff in error say must clearly appear before the court will ignore the stipulation, or claim that the contract was to have been reduced to writing.

We have examined all the authorities to which our attention has been called, and will refer to the language used in some of them on this point. In the case of Cohn v. Plumer, 88 Wis., 626; 60 N. W., 1001, the court says: "If there was a complete contract made by the plaintiffs at the time of the meeting in the architect's office to furnish all the granite required for the building, according to the plans and specifications, for a specified sum, then the plaintiffs can not recover upon a quantum meruit, because it is admitted that they failed to perform such contract. There was ample evidence to sustain the finding of the jury that such a contract was made. * * * The fact that it was expected that a written contract would

afterward be signed, embodying the terms of the oral contract, does not prevent the oral contract from taking effect.''

In Green v. Cole, 103 Mo., 70; 15 S. W., 317, the court says: ''It is a well-settled principle of law that, to constitute a contract, the minds of the parties must assent to the same thing in the same sense. There must be a mutual assent to all of the propositions, for, so long as any matter forming an element of the contract is left open, the contract is not complete. Though the terms of the contract may all be agreed upon, still, if the parties make it a condition to the existence of a contract that the terms agreed upon be reduced to writing and signed by them, there is no contract until this is done.'' Later on in the same opinion this court says: ''Enough has been said to show that, where the parties have assented to all the terms of a parol agreement, it does not follow from the mere fact that a written contract is to be hereafter prepared and signed that no binding contract was made. If they intend the parol contract should be binding upon them, then effect will be given to that intention.'' In the case of Pratt. v. Railroad Co., 21 N. Y., 305, the court says: ''If, therefore, it should appear from the evidence that the minds of the parties had met; that a proposition for a contract had been made by one party and accepted by the other, and the terms of this contract were in all respects definitely understood and agreed upon; and that a part of the mutual understanding was that a written contract embodying those terms should be drawn and executed by the respective parties,— this is an obligatory contract, which neither party is at liberty to refuse to perform. Such a case can not be distinguished from that of an agreement to execute a lease.''

In Avendano v. Arthur, 30 La. Ann., 316, the court says: ''However this may have been, the fact still remains that the lease and the notes were not signed; and this fact brings the case within the rule, coeval with our jurisprudence, and recognized by us in Fredericks v. Fas-

nacht (decided on the 17th of December, 1877), id., 117, that, 'where it has been agreed that the contract shall be reduced to writing, until it is actually written and signed by all the parties either may retract.' * * * The true distinction is laid down in Carlin v. Harding, 10 La., 225: Where there is a complete verbal contract, and the parties afterward agree that it shall be reduced to writing, the verbal contract is valid and obligatory, although the subsequent, independent agreement to have it reduced to writing should not be carried into effect."

We call attention to one more of the authorities on this subject presented by plaintiff in error,— the case of Wharton v. Stoutenburgh, 35 N. J. Eq., 266. In that case the court, among other things, says: "But if to a proposal or offer an assent be given, subject to a provision as to a contract, then the stipulation as to a contract is a term of the assent, and there is no agreement independent of that stipulation. Substantially the same views are expressed by Lord Cranworth in Ridgway v. Wharton, 6 H. L. Cas., 264, 268, in which he affirms the binding force of an agreement, all the items of which have been agreed on, though the parties contemplated that the agreement should be reduced into form before it is finally executed; and in referring to the fact that a formal agreement was in contemplation before the business was to be concluded, as cogent evidence that the parties did not intend to bind themselves until the agreement was reduced into form, he adds: 'That, however, is a question of fact, which must depend upon the circumstances of each particular case.' Other cases to the same effect are collected in a note in Pom. Cont., 89."

We are of the opinion that the errors committed by the district court on the trial of this case were in favor of the plaintiff in error, and for that reason he comes within the rule stated in 2 Enc. Pl. & Prac., 527: "An appellant is not entitled to the reversal of a judgment because it is more favorable to him than the case made in the trial court justifies. No errors committed by the trial court in

the proceedings below afford an available ground of appeal, if they tended to benefit the appellant; and it makes no difference, in the application of the rule that errors favorable to the appellant will not authorize a reversal of judgment against the appellee, that such errors were committed by the court ostensibly in behalf of the appellant or on behalf of the appellee,''— and the large number of authorities ·there cited in support of the text. We think there was no evidence which would justify the district court or this court in finding there had been a contract made on the part of Blackburn to lease the premises for one year, and the judgment of the court below must therefore be affirmed.

We are of the opinion that the proceedings in error in this case were without foundation, and, as a penalty therefor, the defendant in error will be allowed the sum of $25 for a reasonable counsel or attorney's fee, as provided by law, and in accordance with the announcement made by this court in Improvement Co. v. Bradley, 44 Pac., 60 (6 Wyo., 171), which was, in effect, that such allowance would be made when asked for, and the court found as we have·in this case. The judgment will be affirmed.

POTTER, C. J., and CORN, J., concur.