BELMAR CONTRACTING COMPANY, INC., Appellant, *v.* THE
STATE OF NEW YORK, Respondent.

Third Department, November 18, 1920.

Highways — acceptance of bid by Highway Commission for construction of road as completing binding contract — acceptance of bid as agreement to enter into formal contract — liability of State for damages caused to contractor by its delay in executing road construction contract after approving same — performance of contract afterwards as waiver of breach — conversation between contractor and division engineer not constituting new contract.

The plaintiff having submitted a bid for the construction of a highway and having complied with all the requirements of the published notice calling for bids, and the State, through its Commission of Highways, having notified the plaintiff in writing that it was the lowest bidder and directed it to make arrangements to execute the formal contract at once, there was an enforcible agreement between the plaintiff and the State, independently of the execution of a formal contract.

If, however, under section 130 of the Highway Law, it was a necessary prerequisite to the agreement, regarded as an agreement to make a highway improvement and pay therefor, that a formal contract embodying the terms of the agreement should first be subscribed by both parties, then the agreement made was nevertheless a binding agreement to execute a formal contract.

The plaintiff having executed the contract and furnished the required bond, which were approved by the State Highway Commissioner and the State Comptroller, the refusal of the State to permit it to commence the construction of the highway constituted a breach if the contract is regarded as a binding one for a highway improvement, or the refusal of the Highway Commission promptly to execute the contract constituted a breach if the contract is to be regarded as a preliminary contract to enter into a formal contract.

The contract in question called for the laying of an asphalt dressing over broken stone and for extensive concrete curbing and it was executed by the plaintiff on the first day of September and was approved by the Highway Commissioner and the Comptroller before the middle of September but was not formally executed by the Highway Commission till October twentieth and the delay caused by the Highway Commission failing to execute the contract so postponed the work that performance prior to the following spring was rendered impracticable if not impossible, and hence the damages accruing to the plaintiff through the increased cost of construction incident to the delayed work were caused by the delays created by the Highway Commission.

The plaintiff by commencing performance of the contract in the following spring waived the breach of the contract to the extent that the breach would have justified its own abandonment of the contract and a suit for lost profits to be gained by timely performance, but it did not waive the breach in the sense that it could no longer sue to recover damages caused thereby.

In a conversation between the president of the plaintiff and the division engineer of the Highway Commission in the fall to the effect that it was then too late to complete the work and that the work ought to be left till spring, no new promises were entered into, no new consideration was given or promised, and no alteration of the existing contract was made; consequently the previously broken implied obligation of the State not to delay claimant was upon that occasion neither released nor satisfied.

COCHRANE, J., and JOHN M. KELLOGG, P. J., dissent, with opinion.

APPEAL by the claimant, Belmar Contracting Company, Inc., from so much of a judgment of the Court of Claims, entered in the office of the clerk of said court on the 16th day of March, 1920, upon the decision of the court as decrees and adjudges that claimant is not entitled to an award and judgment against the defendant for damages arising from the failure of the defendant to permit the claimant to construct a certain highway in the fall of 1915.

*Ainsworth, Carlisle & Sullivan [Charles B. Sullivan* of counsel], for the appellant.

*Charles D. Newton, Attorney-General [Carey D. Davie* of counsel], for the respondent.

H. T. KELLOGG, J.:

On or about the 5th day of August, 1915, the State of New York, through its Commission of Highways, published a notice to contractors calling for bids for the improvement of one and seventeen one-hundredths miles of highway in the city of

Hudson, in the county of Columbia.   The notice stated that maps, plans, specifications and estimates might be seen, and proposal forms might be obtained at the office of the Commission of Highways.   It called " the especial attention of bidders " to the " information for bidders," the " specifications " and " *contract agreement*" which were on file.   The " information for bidders" to which attention was thus called in its first sentence provided that " the ' specifications ' and ' *contract agreement* ' adopted September 15, 1914, by the New York State Commission of Highways are to be considered as and shall form a part of the contract." It also provided that " Within ten days from the date of notice of award, the person or persons whose proposal is accepted will be required to execute *the* contract and furnish bonds for its faithful performance."   The claimant made a bid for the contract upon a printed form entitled " itemized proposal " and therein made the following declaration: " The undersigned also hereby declare that he had or they have carefully examined the plans, specifications, *form of contract*, and   *   *   * understands that in signing this proposal he or they waive all right to plead any misunderstanding *regarding the same.*" The claimant also declared that it agreed " to do and perform all the work necessary *under the aforesaid conditions* to complete the improvement of the aforementioned highways."   On the 25th day of August, 1915, the claimant was notified in writing by the Highway Commission that it was low bidder and was directed to make arrangements to execute the contract agreement at once.   On September 1, 1915, the claimant executed the formal contract for the highway improvement tendered to it by the Commission of Highways, which it must be assumed was the very contract which the " information for bidders " referred to, and which the claimant in its " itemized proposal " had asserted that it had " carefully examined."   The claimant also submitted a bond for the performance of the contract which was satisfactory to the Commission of Highways. Thereupon Edward Duffy, Commissioner of Highways, wrote the letters " O. K." at the foot of the contract executed by the claimant, and beneath these letters subscribed his initials " E. D."   Subsequently, on the 14th day of September, 1915, one W. I. Lee, Deputy Comptroller of the State of New York, approved the contract by the following words written there-

upon: " Approved Sept. 14, 1915, under the provisions of Chapter 342, Laws of 1913."* Notwithstanding the execution of the contract by the claimant, the filing of a bond by it, the " O. K." of Commissioner Duffy, and the approval of the Comptroller, the contract was not thereafter formally signed by Commissioner Duffy until October 20, 1915. The reason for the delay given by officials of the Highway Commission was the fact that the city of Hudson had not until then made available its share of the moneys to be paid for the improvement. There was no provision of law requiring that the execution of the contract should be withheld until such a time. Moreover, the approval signed by the Comptroller on September 14, 1915, conclusively established that at this time all the necessary moneys were then on hand. After the contract had been executed by it the claimant repeatedly applied to the Commission of Highways requesting that it execute the contract, and was repeatedly told by its officials that they would get the same executed shortly, but that the city of Hudson was holding them up. The " information for bidders " provided that " The work proposed under this contract must be completed on or before the eightieth working day." The formal contract provided that time was of the essence of the contract, and that the contractor must pay ten dollars per day for each day's delay in the performance of the work. Owing to the delay of the Highway Commission in appending its formal signature to the contract, or its delay in granting to the claimant permission promptly to begin work, the claimant was compelled to postpone operations until the spring of 1916, when it performed the contract at an increased cost as found by the Court of Claims of $10,716.05. It is undisputed, and was found by the Court of Claims, that if the contract had been promptly signed by the Highway Commission, and if claimant " had been permitted to begin construction within a reasonable time after claimant's contract agreement and bond had been delivered and accepted by the Highway Commission, and approved by the Comptroller " it would have had time to complete the contract in the fall of 1915. The claimant having performed its contract in the

---

* Amdg. State Finance Law, § 16.— [Rep.

year 1916, thereafter filed this claim for damages on account of the delays in performance occasioned by the Highway Commission. The Court of Claims dismissed the claim, and from its judgment of dismissal this appeal was taken.

When parties exchange promises to perform certain acts upon terms which they have definitely fixed, with the understanding that the promises are to be embodied in a formal contract to be subsequently executed, an enforcible agreement to do the acts specified is thereby made, independently of the execution of a formal contract. (*Pratt* v. *Hudson River R. R. Co.,* 21 N. Y. 305; *Sanders* v. *P. B. F. Co.,* 144 id. 209.) It was said by Judge SELDEN in the first case cited: " If, therefore, it should appear, from the evidence, that the minds of the parties had met; that a proposition for a contract had been made by one party and accepted by the other; that the terms of this contract were, in all respects, definitely understood and agreed upon, and that a part of the mutual understanding was that a written contract, embodying those terms, should be drawn and executed by the respective parties, this is an obligatory contract, which neither party is at liberty to refuse to perform." It was said by Judge O'BRIEN in the second case cited: " In this case it is apparent that the minds of the parties met through the correspondence upon all the terms as well as the subject-matter of the contract, and that the subsequent failure to reduce this contract to the precise form intended, for the reason stated, did not affect the obligations of either party, which had already attached, and they may now resort to the primary evidence of their mutual stipulations." In our case the formal " contract agreement," which the claimant subsequently executed, was on file when the claimant made its bid, and that bid was made, as it was required to be made, to carry out its terms. When the Highway Commission, on the 25th day of August, 1915, sent its notice of acceptance to the claimant, it thereby expressed its assent to all the stipulations, conditions and terms of the " contract agreement," and their performance at the prices named in the bid. We have, therefore, at that time a definite offer, an unqualified acceptance, a meeting of the minds, and, therefore, a contract which, upon its approval by the Comptroller, became binding upon both the parties. Unless the

execution of the formal contract was made necessary by statute the claimant had thus bound itself to build the road and, upon the other hand, the Highway Commission had thus bound the State to pay therefor.   It was an implied term of this contract that the Highway Commission should place the claimant in possession, should establish grades, and provide agents to supervise and direct the work.   When the claimant, through its president, expressed its desire to begin at once, and the Commission declined to execute the formal contract until the city of Hudson had made available its share of the moneys, there was on the part of the Commission a distinct refusal presently to perform the implied obligation, and a breach of contract on its part which caused delays and damaged the claimant.   If, however, under section 130 of the Highway Law, it was a necessary prerequisite to the agreement, regarded as an agreement to make a highway improvement and pay therefor, that a formal contract embodying the terms of the agreement should first be subscribed by both the parties, then the agreement made was nevertheless a binding agreement to execute the formal contract, which was broken by the Highway Commissioner when he refused his subscription thereto within a reasonable time. (*Pratt* v. *Hudson River R. R. Co., supra; Lynch* v. *Mayor*, 2 App. Div. 216.)   In the *Lynch* case the plaintiff submitted a bid to construct certain sewers for the city of New York, in accordance with a form of contract then on file, and his bid was accepted by an official of the city having power so to do.   Subsequently the city of New York refused to execute the formal contract and the plaintiff brought an action to recover damages.   The court said: " The city was bound to execute the contract, and the lowest bidder was bound to execute his contract and to furnish the security required by the statute.   If he failed to perform that obligation he forfeited the sum of money that had been deposited with the officer.   If the city failed to perform and execute the contract, it became liable to the lowest bidder for the damages that he sustained in consequence of such violation."   In *People ex rel. Lunney* v. *Campbell* (72 N. Y. 496) the commissioner of public works of the city of New York, in pursuance of a resolution and ordinance of the common council, advertised for proposals for a street improvement.   The relator was the

lowest bidder and his proposal was accepted.  The commissioner having later refused to enter into a formal contract, the relator applied for a writ of mandamus to compel him to execute the contract.  It was held that the writ was properly withheld, the court saying, through MILLER, J., that the relator " has a right of action against the city for all damages which he has sustained, by reason of the refusal of the commissioner to execute and carry out the contract."  It is not material, therefore, whether we have here a binding contract for a highway improvement, the breach of which was the failure of the Highway Commission promptly to permit construction, or a preliminary contract to enter into a formal contract the breach of which was the failure of the Highway Commission promptly to execute the formal contract, for in either case damages would be recoverable in the same amount.  Thus it was said in *Pratt* v. *Hudson River R. R. Co. (supra)*: " But it is obvious that it could make no difference in the damages, whether the defendant refused to sign the contract, or first signed, and then refused to permit it to be executed.  The loss to the plaintiffs must be the same in either case."  As we have in this case a clear breach of contract, it remains only to inquire (1) whether the delays occasioned thereby caused the damages which the Court of Claims found were suffered, and (2) whether the claimant has in any way waived or released a right of action to recover the same.

As already noted the Court of Claims has found that the claimant, had it not been unreasonably delayed, could have completed the highway improvement in the fall of 1915.  It is an undisputed fact that having been delayed until October 20, 1915, it could not thereafter have completed the work that fall.  The president of claimant without contradiction testified as follows: " By the Court: Q. Well, it was too late really to finish the job that fall?  A. Yes.  Q. Of 1915, wasn't it?  A. From October, it was, Judge, it was too late then."  He testified further that he had a conversation with the division engineer of the Highway Commission, which was as follows: " Mr. Wait, I got this notification to start this job, but I can't start it now because I won't be able to finish it now any more, it is too late.  ' Well,' he says, ' I don't blame you, I don't think the city of Hudson would stand if you couldn't finish it,

stand for tearing up of the streets this time of the year.'
I says 'What will we do?' He says 'You better wait until
1916 now.' And it was left that way." This testimony was
wholly undisputed. The highway improvement contracted
for involved a dressing of asphalt poured upon broken stone
as well as extensive curbing to be made of cement. It is clear
that the asphalt and cement could not have been placed in
the winter season. It is equally clear that the claimant would
not have been permitted to close for the winter more than a
mile of street in the city of Hudson by beginning work in the
fall of 1915 and postponing completion until the spring of
1916. Thus it is apparent that the delays occasioned by the
State necessarily so postponed the work that performance
prior to the spring of 1916 was rendered impracticable if not
impossible. Therefore the damages accruing to claimant were
caused by the delays created by the Highway Commission
and the Court of Claims should so have found.

It is true that claimant by commencing performance in
the spring of 1916 waived the breach of contract committed
by the State in the fall of 1915 to the extent that the breach
would have justified its own abandonment of the contract
and a suit for lost profits to be gained from timely performance.
It did not, however, waive the breach in the sense that it
could no longer sue to recover damages caused thereby. It
is the settled law that a contractor who is delayed in com-
mencing work may nevertheless undertake it; that he may
complete within a period determined by the contract plus the
time of delay; that he may then sue for damages occasioned
by the original delay. (*Allamon* v. *Mayor, etc., of Albany*, 43
Barb. 33; *Weeks* v. *Rector, etc., of Trinity Church*, 56 App.
Div. 195; *Starbird* v. *Barrons*, 38 N. Y. 230; *Cross* v. *Beard*,
26 id. 88; *Barnum* v. *Williams, No. 1*, 115 App. Div. 694;
*Mansfield* v. *N. Y. C. & H. R. R. Co.*, 102 N. Y. 205.)
Any argument made to the contrary is based upon a failure
to note that, although conditions may be waived, promises
must either be satisfied by performance or extinguished by
payment ·or a seal importing payment. Frequently the
performance of a promise by one party to a contract has the
double effect of (1) satisfying an obligation and (2) satisfy-
ing a condition upon which performance of a promise by the

other party is dependent, and in all such cases it is clear that while a waiver of non-performance may destroy the condition it does not extinguish the obligation. In the conversation between the president of the claimant and the division engineer no new promises were entered into, no new consideration was given or promised, and no alteration of the existing contract was made. The claimant was not released thereby from any obligation to construct the highway. Having already been released therefrom by operation of law accordingly as it might elect, it did not then enter into any new engagement for its future construction. On the other hand, the division engineer did not extend the claimant's time for performance otherwise than it had already been extended by operation of law. There was, therefore, no new contract made which modified the old. Consequently the previously broken obligation of the State not to delay claimant was upon that occasion neither released nor satisfied, and the cause of action which had accrued to claimant continued to be enforcible.

The judgment should be modified by adding to the recovery the damages which the Court of Claims found were sustained by claimant through its performance of the contract in the year 1916 rather than in the year 1915, and as modified affirmed, with costs to the appellant. An additional finding should be made that the delays occasioned by the State through its Highway Commission necessarily postponed construction of the highway until the year 1916 as actually constructed, and findings 11, 13 and 14 should be disapproved.

All concur, except JOHN M. KELLOGG, P. J., and COCHRANE, J., dissenting and voting for affirmance, with an opinion by COCHRANE, J.

COCHRANE, J. (dissenting):

The delay of the State Highway Commissioner until October 20, 1915, did not necessitate the delay of the claimant until the following year. The court has found at the claimant's request that it could have completed the work in six weeks which would have made the completion earlier in the year than it was actually completed in the following year. It has also been found at claimant's request that its road building

machinery and plant were idle and that there was sufficient labor available in the autumn of 1915. It is also found that the delay until the following year was the result of a mutual agreement and that " in conformity with this arrangement the work was not started by the claimant until the month of April, 1916." Such delay was at the suggestion and for the convenience of the claimant. That must be so because the contract as accepted by claimant required its performance within eighty days. If the claimant was dissatisfied with the delay of the Commissioner it should have repudiated the contract at that time and not have accepted its benefits. I think it clearly waived the delay which up to that time had been occasioned. If the claimant on October 20, 1915, had stood on its rights a different measure of damages would be applicable to the case. Furthermore, having accepted the contract and having made a further agreement for postponed performance thereof and having enjoyed the fruits thereof and having received full payment of the contract price according to its terms, I do not think it can recover for a breach of that contract which consists solely in not having signed it more speedily. (*New York State Construction Co.* v. *City of New York,* 163 App. Div. 227.) Full performance of the contract and such a breach thereof as is here alleged cannot co-exist. And in any event the damages would only be such as the claimant would have sustained if it had promptly performed the contract as by its terms required after October 20, 1915.

I favor an affirmance of the judgment.

JOHN M. KELLOGG, P. J., concurs.

Judgment modified by adding to the recovery the damages which the Court of Claims found were sustained by claimant through its performance of the contract in the year 1916 rather than in the year 1915, and as modified affirmed, with costs to the appellant. An additional finding is made that the delays occasioned by the State through its Highway Commission necessarily postponed construction of the highway until the year 1916 as actually constructed; and findings 11, 13 and 14 are disapproved.