JOHN W. ROUSE CONSTRUCTION CORPORATION, Respondent, *v.* ALBANY ACOUSTICAL CORPORATION, Appellant.

Third Department, August 13, 1959.

*Tobin & O'Brien* (*John E. Knauf* of counsel), for appellant.

*Joseph Jiudice* for respondent.

GIBSON, J. Plaintiff, the general contractor for the construction of a high school building, has recovered damages for the breach by defendant of its alleged subcontract to furnish all lathing and plastering required under the general contract. On

March 12, 1955, by telephone, defendant submitted to plaintiff its bid of $35,397 for the work in question, and plaintiff used this figure, which was substantially lower than other proposals received by it for this work, in preparing its bid for the general construction. By letter of March 22, expressly in verification of such bid, defendant proposed for the sum above stated " to supply and erect the lath and plaster as outlined in Sec. 11 of the Specifications and indicated on the Room Finish Schedule." Plaintiff, being the successful bidder, entered into the general construction contract with the Board of Education on March 31. On April 7, plaintiff's representative telephoned Mr. Ma Lossi, defendant's vice-president and general manager, and, according to testimony which the jury could accept, told him that defendant " had the contract for the lathing and plastering work " to which Mr. Ma Lossi replied, " ' That is fine ' or words to that effect "; and in the same telephone conversation a meeting was arranged for the next day. At that meeting the parties went over the plans and specifications and discussed " various details of the plans and specifications " and " tentative progress schedules ". At a second meeting, on April 15, work schedules were again discussed, and then, for the first time, the question of a hoist for lifting defendant's materials to the second floor was mentioned. Plaintiff's representative, Mr. Tokos, testified that he told Mr. Ma Lossi that plaintiff would not provide a hoist but that if one were available at the job, defendant could use it. In his testimony as to this same discussion Mr. Ma Lossi said that he " tried to get a commitment " from plaintiff as to a hoist or other mechanical means of moving material to the second floor and could not. Nevertheless, on April 21 (apparently because plaintiff had stated that there was no written confirmation in its files) defendant wrote plaintiff reconfirming the proposal, in the same terms as in its letter of March 22, with an addition not material here; and in another letter of the same date discussed a construction problem which it had apparently solved and remarked, " This is actually the only change we have to offer." This latter letter also discussed the use of defendant's scaffolding by other trades but, like the reconfirmed proposal, was completely silent as to any question of a hoist.

With a letter dated May 5 plaintiff transmitted to defendant a so-called " purchase order for the work you will be doing on this project " and in the letter stated that plaintiff had not as yet decided what arrangements it would use for raising material to the second floor level but that defendant could be sure of plaintiff's cooperation. By letter of May 13, defendant sought to " remind " plaintiff to meet the hoisting problem by selecting

equipment which would be suitable for defendant's work as well as for plaintiff's. In the same letter defendant discussed two technical questions and in closing remarked that " none of these problems are sizeable ". By letter of June 18, plaintiff acknowledged defendant's letters of April 21 and May 13 and after brief discussion of other questions said: " We have not decided what we will use for hoisting but you will have access to our equipment under the terms of your letter of May 13. In the event we do not have hoisting equipment on the job, you will, of course, provide as required for your use." By letter of June 20, defendant advised plaintiff that it could not " accept the stipulations " of the above-quoted paragraph of plaintiff's letter of June 18, and returned the purchase order. Mr. Tokos testified, without any substantial contradiction, that he then telephoned Mr. Ma Lossi who said defendant could not complete the contract because plaintiff would not supply a hoist and, also, because defendant had taken on additional work; to which Mr. Tokos replied that plaintiff had never agreed to provide a hoist, unless it should have one available on the job; and " told him to reconsider ", that he would try to work out a schedule to have a hoist available, and that was " how the conversation ended ". Plaintiff also replied by letter to defendant's letter of June 20, saying, " please do not consider the matter closed as we wish to make a study of the material hoisting equipment that will be necessary " and, further, " When this study has been completed we will contact you regarding your hoisting requirements." This was followed by plaintiff's letter of August 1 which referred to a conversation of July 28 and to a recent meeting and stated that plaintiff would furnish suitable hoisting equipment and continued: " We are revising our progress schedule and as agreed you will review your commitments. Within the next week or so I will contact you * * * so that we can get together and see if you can arrange to do this contract according to our schedule." In September the situation had not changed and plaintiff contracted for the lathing and plastering with another contractor for the sum of $50,000 and there was testimony that this amount was the fair and reasonable value of the work. The jury's verdict of $14,603 is the difference between that sum and defendant's bid and is not now questioned as to amount.

The issue of basic contract law — the formation of a contract by unequivocal acceptance of a definite offer — was resolved by the jury in respondent's favor under a comprehensive charge to which appellant took no exception. The offer constituted by appellant's bid could scarcely have been more specific, defined

as it was by the closely detailed specifications. Indeed, appellant's brief states that its bid " was an offer to do the job for a specified amount in accordance with the published specifications." With some inconsistency, appellant argues, however, that there remained two material elements as to which the parties never reached agreement. The first is said to have been the scheduling of the work, but since the general contract specified 450 days for its completion there would seem little room for question in the minds of these experienced contractors as to the approximate time the work of lathing and plastering would have to be done. There is no suggestion that the parties did not or could not agree upon work schedules and there was never any intimation that this question was a factor in appellant's decision not to proceed with the work. The second element absent from the contract, in appellant's theory, was agreement as to a hoist, but it seems clear beyond question that there was never any basis for argument that the proposal and acceptance, or either, contemplated that respondent would furnish such equipment and appellant's witness conceded that respondent's position that it was not bound to do so never changed. Most significantly, appellant reconfirmed its proposal after the matter of a hoist was first discussed, without any reference thereto, although noting other additions.

Appellant seems to suggest that the acceptance on April 7, 1955 was not intended or treated by respondent as completing a contractual arrangement since respondent later submitted a so-called purchase order which, in appellant's view, was intended by respondent to constitute the contract. If this was the intended effect of the purchase order, appellant is in no way aided thereby as a contract arising out of an offer and acceptance will be recognized in the event it is not followed by the written contract contemplated at the time, provided the terms originally assented to are, as here, sufficiently definite. (*Sanders* v. *Pottlitzer Bros. Fruit Co.*, 144 N. Y. 209; *Pratt* v. *Hudson Riv. R. R. Co.*, 21 N. Y. 305.)

Appellant contends finally that respondent's submission of the purchase order constituted a counteroffer, which appellant did not and was not bound to accept, and which had the effect of rejecting appellant's original bid.

In its brief, appellant asserts that five items listed in the purchase order are variations from and in excess of the specifications. Of these, the specifications seem broad enough to cover all except item 4 (" Broom clean all floors ") and item 5 (" Protect all work — clean where necessary ") and these may scarcely be deemed substantial variations or such as, upon a

breach, would warrant cancellation pursuant to the provision therefor of which appellant also complains. Of no greater importance is the request appearing in the purchase order that defendant furnish a certificate of its public liability insurance. Other items of like purport but of no greater substance are referred to in appellant's brief but are not supported by the copies of exhibits submitted pursuant to stipulation. None of the objections to the purchase order were at any time advanced by appellant during the period of approximately 45 days it held the purchase order, when valid objections were doubtless remediable, or when it rejected the order upon an entirely different ground (cf. 3 Williston, Contracts [rev. ed.], § 742, p. 2105), or thereafter; none of them were mentioned upon the trial; and they now appear for the first time in appellant's brief. Quite aside from any legal effect, these omissions of earlier complaint seem to us important as they tend to indicate that appellant attached little or no importance to the supposed variations, which seem to us in any event not substantial.

The judgment and order should be affirmed, with costs to respondent.

BERGAN, J. P., COON, HERLIHY and REYNOLDS, JJ., concur.

Judgment and order affirmed, with costs to respondent.