[Filed June 18, 1887.]

## S. A. NEPPACH et al., Respondents, *v.* W. P. JORDAN, Appellant.

Lease—Landlord and Tenant—What is Necessary to Create.—To create such relation, the defendant must have entered into possession in subordination to the owner's title, and with his consent, express or implied.

Same.—When the owner permits a party to go into possession under an agreement for a lease which he afterwards refuses to make, the relation of landlord and tenant exists, and the possession is lawful until it is lawfully terminated.

Same.—A person who enters without any lease or consent from the owner is only a trespasser, and is entitled to but ten days' notice, whether the occupation be for agriculture or not.

Same.—An instruction to the jury that if they found that the defendant entered into possession of the premises without the consent of the owner, but by an arrangement with a former tenant, before such former tenant's term expired, the defendant would be holding over under the former tenant's lease, and be only entitled from that fact to ten days' notice to quit. *Held*, to be error as misleading, when it appeared that the defendant had no assignment from the former tenant, who was a lessee of the owner, but simply by consent of both the former tenant and the owner, entered upon the premises and occupied them jointly with the former tenant until the expiration of his lease, when he vacated the premises. The defendant's rights could not depend at all upon the terms of the former tenant's lease.

Same.—It was not error to refuse to instruct the jury that if they found that the defendant occupied the premises in question for agricultural or farming purposes, he would be entitled to ninety days' notice to quit, as the instruction assumed that the occupation was with the consent of the owner, and that being in dispute, was a question of fact for the jury to determine.

Appeal from Multnomah County. Reversed.

*Doud & McCoy*, for Appellant.

Chapter 20 of the Miscellaneous Laws of Oregon is derogatory of the common law, and should be strictly construed. (*Houser* v. *Keiser*, 8 Cal. 499; 52 Barb. 198; 58 Barb. 270.)

Forcible entry and detainer and forcible detainer only are separate causes of action (*Valence* v. *Couch*, 32 Cal. 341); and the issues raised by these pleadings are the latter only, and the court should have charged in reference to that issue. (*Merrill* v. *Forbes*, 23 Cal. 379; *Schilling* v. *Holmes*, 23 Cal. 227.)

*Chas. H. Hewitt*, for Respondents, cites §§ 11, 12, and 13, ch. 23, Misc. Code, subd. 6; § 775, tit. 8, ch. 8, Code.

LORD, C. J.—This was an action of forcible detainer commenced in a Justice's Court, and in which judgment was rendered for the plaintiff, and by the defendant appealed to the Circuit Court. A trial was had and a verdict was found against the defendant of guilty, upon which judgment was rendered in favor of the plaintiff for the possession of the premises described in the complaint. From this judgment the defendant has appealed to this court. The error assigned relates to certain instructions given, and the refusal to give one asked, and the substitution by the court of another in lieu thereof. Briefly, it may be said that it appears by the bill of exceptions that the evidence of the plaintiff tended to show that the defendant had entered into the possession of the premises without his consent, and without any lease or agreement, written or verbal, therefor, and had refused to deliver the possession of the premises after demand and notice to quit, and had said to the plaintiff that he would "defend his possession with the gun." On the other hand, the defendant, after denying the complaint, alleged affirmatively, and his evidence as disclosed by the bill of exceptions tended to show, that the plaintiff had verbally agreed to give him a written lease for the premises for five years for agricultural purposes; and that he consented if he, the defendant, could make arrangements with one Pike, who was then in possession of the premises under a lease which expired within a month, he might enter thereon, and that in pursuance thereof he effected such an arrangement with Pike, and was in possession of the premises when Pike's lease expired and he quit the premises; but that the plaintiff had refused to make the lease as he had agreed. There was also evidence tending to show the character of his occupation, and the various things he did while thus occupying it, based on the expected or promised lease. It was admitted that ten days before the commencement of the action, the plaintiff had served a written notice upon the defendant, demanding the possession of the premises. This was after Pike's lease had expired, and the defendant was in the possession of the land. It will be seen, then, that the plaintiff claimed that he was entitled to the possession of the premises when Pike's lease

expired, as the defendant had occupied them without his consent, for any purpose, agricultural or otherwise, and had refused to deliver the possession, and threatened to defend it; while the defendant claimed the facts to be as stated, and that his possession was with his (plaintiff's) consent, and for agricultural purposes, and that, therefore, he was entitled to ninety days' notice instead of ten days' notice, as given. The theory of the defendant is that the relation of landlord and tenant existed between the plaintiff and himself.

*Consent necessary to create tenancy.* To create that relation, the defendant must have entered into the possession of the premises in subordination to the plaintiff's title, and with his consent, express or implied. A mere agreement for a lease does not create a tenancy, or give to the party with whom it is made a right to the possession (*Billings* v. *Canney*, 57 Mich. 425); but where the owner permits a party to go into possession under an agreement for a lease which he afterwards refuses to make, the case is different, and the relation of landlord and tenant does exist between the parties. In such case his possession is lawful until it is properly terminated. Our statute provides that an action for the recovery of the possession may be maintained in the case specified in subdivision 2 of section 11, when notice to quit has been served upon the tenant or person in possession for the period of ten days before the commencement thereof, unless the leasing or occupation is for the purpose of farming or agriculture, in which case such notice must be served for the period of ninety days before the commencement of the action. (Misc. Laws of Or. Code, § 13, p. 615.) Subdivision 2 of section 11, referred to, provides that after a notice to quit, etc., " or without any written lease or agreement therefor," shall be deemed a case of unlawful holding by force. Now the defendant contends that his possession or occupation of the premises was with the consent of the plaintiff and in subordination of his title, under a verbal promise or agreement with him to execute a lease for five years for agricultural purposes, which subsequently to his occupation, made in pursuance thereof, the plaintiff refused to make, and that he is, therefore, within the purview of the statute cited,

a tenant or person in possession or occupation of the lands for the purpose of agriculture, and entitled to ninety days' notice.

*A trespasser only entitled to ten days' notice.* The court charged the jury that "if they found that the defendant entered into possession of said premises without the consent of William Neppach (the plaintiff), when Neppach was entitled to the possession, then he would be a mere trespasser, and would not be entitled to but ten days' notice, and it would make no difference whether the premises were agricultural lands or not." As the plaintiff was entitled to the possession of the premises upon the expiration of Pike's lease, unless he had given his consent to the occupation of the premises by the defendant, under the circumstances indicated, it would seem to follow, if he had not given such consent, and the defendant had entered and held the possession when the plaintiff was entitled to it, that the defendant was a trespasser, and not entitled to the notice he claims. This is the effect of the instruction, and in this, we think, there was no error. The court further charged the jury that "if they find the defendant entered into the possession of said premises without the consent of William Neppach, but through an arrangement with Pike before Pike's term expired, then he would be in lawful possession, but would be holding over under Pike's lease, and consequently, would only be entitled to ten days' notice, and that it would make no difference whether the premises were agricultural lands or not." This instruction is based on evidence offered both by the plaintiff and the defendant. But the conclusion which it reaches that the defendant in the case stated would be holding over under Pike's lease, and only entitled to ten days' notice to quit, etc., is hardly correct, and is calculated to confuse and mislead. The defendant had no assignment of the Pike lease, and did not stand in his shoes; he simply arranged with Pike to enter into possession according to his verbal agreement with the plaintiff preparatory to the contemplated lease. Pike consenting, they thus occupied together, but when Pike's lease expired, he quit the premises and thus terminated his lease. The defendant, therefore, could not be holding over under that lease. The consent which the plaintiff gave the defendant to occupy was nugatory, unless Pike con-

sented during his lease; but such consent was good until it was withdrawn, and attached when Pike's lease expired, and inured to the benefit of the defendant until his occupancy was lawfully terminated. For the defendant to have sustained the relation to the plaintiff as Pike holding over, he would have to have been the assignee of the Pike lease. If, therefore, he entered without the consent of the plaintiff, but simply went into possession with the assent of Pike, when the Pike lease terminated, and Pike vacated the premises, the defendant was not in lawful possession, or holding over under Pike's lease. But whether Pike would be entitled to ten or ninety days' notice to quit, as a tenant holding over after the expiration of his lease, would depend on the fact whether the leasing was for the purpose of farming or agriculture; and as the defendant did not succeed by assignment to the Pike lease, but his rights depend on the consent of the plaintiff to make out the relation claimed to exist, his right in no way depended upon, nor can be measured by that lease. We think this instruction was error. The next exception is in refusing to give this instruction : " If the jury find that the defendant occupied the premises in question for agricultural or farming purposes, then said defendant would be entitled to ninety days' notice to quit the premises before the action of forcible entry and detainer could be brought." And in lieu thereof, instructing the jury that "if they find from the evidence that the defendant and William Neppach made an oral agreement that said Neppach would make a lease in writing, devising the premises in controversy to the defendant for five years, at a rent of one hundred and fifty dollars a year in advance, and in pursuance of that agreement and with the consent of said William Neppach, the defendant entered into the possession of the premises, such possession was lawful until defendant's right to possession should be terminated in a lawful manner; and in that case William Neppach, though not bound to make a five years' lease, could not terminate the lawful occupation of the defendant so created without a notice to quit of ninety days; and if the jury find the facts as stated in this instruction, and further find that only ten days' notice to quit was given the defendant, then the verdict

should be not guilty." Upon the assumption that the contemplated lease was for the purposes of agriculture as alleged, and the evidence tended to prove, this instruction is not only correct, but as favorable to the defendant as he could have asked. Nor is it understood that any particular complaint is made directly against it, but that it was not sufficient to include the instruction asked, or to take its place. The error in the instruction asked lies in assuming that the possession of the defendant as against the plaintiff was with his consent. That was a fact to be found before the jury could proceed to the consideration of the matter suggested in the transaction. The consent of the plaintiff was essential to create the tenancy, and when that is the fact in dispute, as here, the question whether the relation of landlord and tenant exists is for the jury. (*Chamberlin* v. *Donahue,* 44 Vt. 37; *Rigg* v. *Bell,* 5 Term Rep. 471.) But for the reasons already suggested in the second instruction given and excepted to, the judgment must be reversed and a new trial ordered.