Barney, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
This suit is brought by the plaintiff to recover the sum of $2,279.39 collected from it as a corporation tax for the year 1912 under the provisions of section 38 of the act of August 5,1909. 36 Stat., 11,112-117.
The plaintiff is a railway corporation, organized under the laws of the State of Colorado. Its articles of incorporation authorized it to “mortgage or lease the whole or any part of such railroad with the improvements thereon at pleasure”; and by a special act of the General Assembly of the State of Colorado it was authorized “to lease its entire railroad, assets, and property of every description whatever to any railroad company.” On the 24th day of December, 1899, the plaintiff, as party of the first part, entered into a contract with the Denver and Rio Grande Railroad Co. and the Colorado Midland Railway Co., as parties of the second part, which provided in substance as follows: After some recitations showing that the plaintiff company was then engaged in the construction of the railroad authorized by its articles of incorporation, and for that purpose had authorized the issue of two millions of first-mortgage gold bonds, and that the other two companies desired the possession and use of this railroad for junction purposes, it was agreed (1) that the parties of the second part would guarantee the payment of said gold bonds; (2) that the plaintiff company would complete its railroad in all respects except rolling *278 stock on or before May 1,1890; (3) after such completion or sooner, at the joint request of said other two companies, it agreed to execute and deliver to them a lease of said junction railroad for the term of fifty years from the first day of January, 1890. In consideration of the execution of said lease the parties of the second part agreed to pay to the plaintiff company as rent for its said railroad thirty per cent of its gross earnings, said rent to be first applied to the payment of the coupons of said gold bonds, and the surplus, if any, in such manner as the board of directors of the plaintiff company should direct; also that said parties of the second part would pay all taxes assessed and levied against said railroad property and betterments and improvements during the terms of such lease. Said contracts also provided that it was not to take effect until ratified by the shareholders of all of said parties in accordance with the laws of the State of Colorado.
It appears that the laws of the State of Colorado require such contracts to be ratified by two-thirds of said shareholders at a meeting called for that purpose, and that requirement seems to have been satisfied.
Immediately upon the completion of said junction railway said parties of the second part entered into its possession and use, under said contract, and have continued in such possession and use ever since, paying to the plaintiff the rent therefor as provided to be paid in the lease agreed to be executed in said contract.
Since the execution of said contract the only business transacted by the plaintiff has been the collection of its rental under said contract, the payment of the interest on said gold bonds, and the distribution of dividends among its stockholders. For the year 1912, less its exemption, the income of the plaintiff was $221,299.56, upon which a tax of $2,213 was assessed by the collector of internal revenue at Denver, Colo., and demanded of the plaintiff. Payment of this tax was refused, and afterwards three months’ interest on this sum was added for failure to pay the tax before July 1, 1913, making the whole tax subsequently demanded $2,279.39, which was paid by the plaintiff under protest. *279 It is for the recovery of this sum that this suit is brought, the plaintiff contending that it was not due under the provisions of the corporation tax act of August 5, 1909, which act, so far as it relates to the question involved in this case, is as follows:
“That every corporation * * * organized for profit and having a capital stock represented by shares * * * and engaged in business in any State * * * shall be subject to pay annually a special excise tax with respect to carrying on or doing business by such corporations * * * equivalent to 1 per cent upon the entire net income over and above $5,000 received by it from all sources during such year, exclusive of amounts received by it as dividends upon stock of other corporations * * * subject to the tax hereby imposed. * * *
“ Such net income shall be ascertained by deducting from the gross amount of the income of such corporation, * * * received within the year from all sources (first) all the ordinary and necessary expenses actually paid within the year out of income in the maintenance and operation of its business and properties, including all charges, such as rentals or franchise payments, required to be made as a condition to the continued use or possession of the property-; (second) all losses actually sustained within the year and not compensated by insurance or otherwise, including a reasonable allowance for depreciation of property * * 36 Stat., c. 6, pp. 11, 112-117.
This statute has been construed by the Supreme Court in several cases, and the decisions of that court in the following cases will be briefly noted:
In the case of Zonne v. Minneapolis Syndicate, 220 U. S., 187, the defendant was a corporation organized for and engaged in the business of letting stores and offices in a building owned by it, and collecting and receiving rents therefor. This corporation demised and let all of the real estate belonging to it to another party for the term of 130 years. Subsequently it caused its articles of incorporation to be so amended as to make its sole business the holding of the title of said real estate subject to said lease, and the distribution of its rentals therefor as well as the proceeds of any sale of the same among its stockholders. The court held that under these circumstances said corporation was not *280 engaged in doing business within the meaning of said act. Justice Day, who delivered the opinion of the court, said:
“Upon the record now presented we are of the opinion that the Mineapolis Syndicate, after the demise of the property and reorganization of the corporation, was not engaged in doing business within the meaning of the act. It had wholly parted with control and management of the property; its sole authority was to hold the title subject to the lease for 130 years, to receive and distribute the rentals which might accrue under the terms of the lease, or the proceeds of any sale of the land if it should be sold.”
The case of McCoach v. Minehill & Schuylkill Haven Ry. Co., 228 U. S., 295, presented the following facts: The Mine-hill Company was a corporation incorporated by the Legislature of the State of Pennsylvania for the purpose of constructing and operating a railroad, and under its charter had built a railroad and operated it for many years. Under the authority of the legislature it leased its railroad and all of the appurtenances thereto belonging unto the Philadelphia & Beading Bailway Company for a term of 999 years from January 1, 1897. Pursuant to this lease the entire railroad and all the property connected with it was turned over to the Beading Company and since then has been operated by that company. The Minehill Company has since kept up its corporate existence, collected and distributed its rents, maintained offices, stock books, etc. The court decided that it was not subject to the tax imposed by this act. In the opinion in that case, delivered by Mr. Justice Pitney, it was said, Id., 305, 306:
“As- to these matters the case is governed by what was said by the court in Flint v. Stone Tracy Co., 220 U. S., 145: ‘ It is therefore apparent, giving all the words of the statute effect, that the tax is imposed not upon the franchises of the corporation irrespective of their use in business, nor upon the property of the corporation, but upon the doing of corporate or insurance business and with respect to the carrying on thereof.’ And again, page 150: ‘ The tax is not payable unless there be a carrying on or doing of business in the designated capacity, and this is made the occasion for the tax, measured by the standard prescribed.’ ”
*281 Also, Id., 306:
“ In our opinion the mere receipt of income from the property leased (the property being used in business by the lessee and not by the lessor) and the receipt of interest and dividends from invested funds, bank balances, and the like, and the distribution thereof among the stockholders of the Mine-hill Company, amount to no more than receiving the ordinary fruits that arise from the ownership of property.”
The same doctrine is adhered to in the later case of Emery, Bird, Thayer Realty Co. v. United States, 237 U. S., 28, where it is said:
“ The question is rather what the corporation is doing than what it could do.”
But it is contended by the defendants that this case does not come within the decisions cited because the plaintiff has never leased its property. We do not agree with this contention. A contract to make a lease was executed; the lessees entered into possession of the property under this contract, paid the agreed rental, and have remained in such possession and continued to pay such rental ever since. Thus it appears that the relation of landlord and tenant in fact has during all that period been maintained. Many authorities might be cited to the proposition that the facts stated created a tenancy, and the relation of landlord and tenant. Cheney v. Newberry & Co., 67 Cal., 125; Neppach v. Jordan, 15 Oreg., 308; 24 Cyc., 884, and cases cited; Taylor’s Landlord and Tenant, sec. 43, et seq.
However, whatever may be the strict legal definition of the relation of the parties in such a case as this, the result of such a transaction is exactly the same as the formal lease provided for if the agreement had in fact been executed. Pratt v. Hudson River R. R. Co., 21 N. Y., 305; Sanders v. Pottlitzer, 144 N. Y., 209. It is certain that so long as the agreed rent was paid there could have been no eviction of the tenants in fact, and if there had been a failure to pay the rent agreed upon in the contract an action at law could have been maintained to recover it. If either party had refused to execute the lease as agreed, the other party could have compelled such execution by proceedings in equity. In the meantime it would seem to be a case for the application *282 of one of the maxims of equity jurisprudence that equity looks upon that as done which ought to have been done. We do not think, however, the case presented by the plaintiff comes within the cases cited, for reasons which we will proceed to give. Its articles of incorporation show that it was designed as a junction company; that is to say, that it was intended as a connecting line between other lines named. The contract for a lease was executed within six months after the date of its articles of incorporation, and by its terms it may be well inferred that the lessees guaranteed the payment of all funds borrowed for its construction, and from the latter fact it may well be inferred that its construction was not begun until these bonds were issued and their payment guaranteed. It does not appear that this company ever purchased or owned any rolling stock or anything pertaining to the operation of a railroad except its track and appurtenances necessary for the use of rolling stock. As soon as said junction railroad was completed the lessees took possession of it and have been operating it ever since. Shortly after it was incorporated and before the execution of the agreement the General Assembly of Colorado authorized the plaintiff to lease its railroad (not then built), which must have been for the purpose of making doubly certain what the articles of incorporation already seemed to allow. These facts lead to but one conclusion, and that is that the “ business ” for which the plaintiff was incorporated was to build and lease a junction railroad and enjoy the profits of that business alone. It never equipped a railroad for use as such and never intended to, as all the facts go to show. If plaintiff is allowed to evade payment of the corporation tax in this way, we see no reason why this practice can not be followed in the construction hereafter of every railroad and thus evade the payment of a large percentage of the tax upon the net income of railway corporations.
In the McCoach case, supra, Mr. Justice Pitney, in delivering the opinion of the court, said: “ From the facts as stated above it is entirely clear that the Minehill Company was not during the years 1909 and 1910 engaged at all in the business of maintaining or operating a railroad, which was the prime object of its incorporation” (italics ours). (Id., 303-304.) *283 In the instant case plaintiff was not during the time for which it was taxed “ engaged at all in the business of maintaining or operating a railroad,” and that was not the “prime object of its incorporation.” In fact, it has been from the beginning engaged in the prime object of its incorporation, which is the leasing of a junction railroad and distributing the rent among its stockholders. In other words, the plaintiff organized for the purpose and only purpose of building and leasing this one particular road and, as a necessary consequence, of collecting and distributing among its stockholders the rents received. It has performed the first purpose and is now engaged in the second.
In the Flint case, supra, Mr. Justice Day, who delivered the opinion of the court, said, at page 150: “ In the present case the tax is not payable unless there be a carrying on or doing of a business in the designated capacity'' * .* * (italics ours). As we think we have already shown, whatever powers the plaintiff by its articles of incorporation may have had, it exercised and only intended to exercise the one designated capacity of building and leasing a junction railroad, and it was upon the income derived from this lease that it was taxed.
In the case of Park Railroad Co., cited in the McCoach case, 228 U. S., at pages 311, 312, it appears that the corporation was “ organized to work, develop, sell, and convey real estate; to lease, exchange, hire, or otherwise acquire property ; to erect, alter, or improve buildings; to conduct, operate, manage, or lease hotels, etc. It appeared that at the time of the imposition of the tax the sole business or property owned by the realty company was the Hotel Leonori. It was leased for 21 years at an annual rental of $55,000. The corporation was engaged in no business, except the management and lease of that hotel property, and was in receipt of no other income than that derived from its rental, and has no assets other than that property and the income thereof. It was held to be doing business within the meaning of the act.” There was no extended report of the proceedings on appeal in that case, but the decision appears to have been as stated in the above quotation.
*284 From all these cases we believe the true doctrine to be that if a corporation is doing the business for which it was organized the income derived from such business is taxable under the act of August 5, 1909, supra. If the purpose for which it was organized was to build and lease property, then the rents derived from such lease are taxable, even though thereby the corporation leases all the property and of necessity goes out of all corporate business excepting the collection and distribution of its rents. We do not believe a corporation should be allowed to organize for the ostensible purpose of building and operating a railroad and then lease the road before it was built under such circumstances as to show that that was its original and only purpose, and thereby evade the payment of the corporation tax.
It follows from the foregoing that the petition should be dismissed, and it is so ordered.
All concur.