WILLIAM W. BRAUER, Appellant, *v.* THE OCEANIC STEAM NAVIGATION COMPANY, LIMITED, Respondent.

1. STATUTE OF FRAUDS — WHEN AVAILABLE AS A DEFENSE ALTHOUGH NOT PLEADED. Where an action is brought to recover damages for the breach of an alleged written contract and the defendant specifically denies that a written contract was executed, such denial is sufficient to permit the defendant, when plaintiff has proved an oral contract either in lieu or in support of the written one declared on in the complaint, to raise the objection that the contract was within the Statute of Frauds by a motion to dismiss the complaint, or for the direction of a verdict, upon that ground, and where it appears from the proof that such agreement was not to be performed within the term of one year the motion should be granted.

2. CONTRACT — WHEN TELEGRAPHIC CORRESPONDENCE PURPORTING TO CONFIRM ORAL AGREEMENT DOES NOT CONSTITUTE A WRITTEN CONTRACT. Where telegraphic correspondence, following oral negotiations and purporting to confirm a proposed agreement, omits essential and important parts of the agreement, such correspondence does not constitute a valid written contract, binding upon the parties thereto, upon which an action to recover damages for an alleged breach thereof may be maintained.

*Brauer* v. *Oceanic Steam Navigation Co.*, 83 App. Div. 643, affirmed.

(Argued April 5, 1904; decided April 26, 1904.)

APPEAL from a judgment, entered June 23, 1903, upon an order of the Appellate Division of the Supreme Court in the first judicial department overruling plaintiff's exceptions, ordered to be heard in the first instance by the Appellate Division, denying a motion for a new trial and directing judgment for defendant on a verdict directed at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Lyman E. Warren* and *Ira D. Warren* for appellant. A full and complete and binding contract was made between the parties for the cattle space on defendant's steamers as alleged in the complaint. (*Gates* v. *Dudgeon*, 173 N. Y. 426; *Nichols* v. *S. S. Co.*, 137 N. Y. 471; *Stillwell* v. *O. S. Co.*, 5 App. Div. 212; *Sanders* v. *P. B. F. Co.*, 144 N. Y. 209; *Canda* v. *Wick*, 100 N. Y. 127; *Diskin* v. *Herter*, 75 App.

Div. 453; *Crossett* v: *Carleton*, 23 App. Div. 366.) The
defendant's refusal to carry out his contract unless the plain-
tiff would sign a written contract which the parties had not
only never made, but which contained conditions, never
before suggested, constituted a breach of the contract. (*How-
ard* v. *Daly*, 61 N. Y. 362–370; *Canda* v. *Wick*, 100 N. Y.
127; *Burtis* v. *Thompson*, 42 N. Y. 246.) The court's direc-
tion of a verdict in favor of defendant and its refusal to allow
plaintiff to go to the jury, if based upon the ground that there
was no contract made between the parties, was error. (*Savery*
v. *Ingersoll*, 46 Hun, 176; *Winchester* v. *Howard*, 97 Mass.
303; *Stokes* v. *Mackay*, 140 N. Y. 640; *Thurston* v. *Thorn-
ton*, 1 Cush. 89; *White* v. *Hoyt*, 73 N. Y. 505.) If the
direction of a verdict for the defendant was based upon the
ground that it was the intention of the parties to have the
agreement reduced to writing and the failure so to do ren-
dered the contract unenforceable, it was error. (*Diskin* v.
*Herter*, 73 App. Div. 453.)

*Everett P. Wheeler* for respondent. No contract was con-
cluded by the telegrams. (*United Press* v. *N. Y. Press Co.*,
164 N. Y. 406; *Mackintosh* v. *Thompson*, 58 App. Div. 25;
*S. S. Co.* v. *Holbrook*, 101 N. Y. 45; *La Campania* v. *S. A.
Co.*, 146 N. Y. 483; *Flaherty* v. *Cary*, 62 App. Div. 116;
*Nicholls* v. *Granger*, 7 App. Div. 116; *Hussey* v. *Horne*, L.
R. [4 App. Cas], 311; *Chinnock* v. *Ely*, 4 DeG., J. & S.
638; *Miller* v. *H. & S. J. R. R. Co.*, 90 N. Y. 430; *P. S.
C. Co.* v. *E. R. R. Co.*, 121 Fed. Rep. 609.) The complaint
alleged a written contract. No plea of the Statute of Frauds
would, therefore, have been proper or availing. But con-
fessedly the plaintiff's case broke down upon this point. His
reliance was upon a verbal contract. The motion to direct a
verdict upon the ground that such a verbal contract would be
void under the Statute of Frauds was, therefore, well taken.
(*Drake* v. *Seaman*, 97 N. Y. 230; *Ward* v. *Hasbrouck*, 169
N. Y. 407; *Mentz* v. *Newwitter*, 122 N. Y. 491; *Williams*
v. *Morris*, 95 U. S. 444; *Roe* v. *Barker*, 82 N. Y. 431.)

CULLEN, J.   The action was brought to recover damages for the breach of an alleged written contract whereby the defendant agreed to let to the plaintiff the cattle space in all its steamships plying between the city of New York and the city of Liverpool for the purpose of transporting cattle thereon from December 1st, 1897, to the 30th day of November, 1898, in consideration whereof the plaintiff agreed to pay forty-two shillings and six pence sterling per head.   The defendant denied making the agreement.   The defendant is the owner of what is commonly known as the White Star Line.  In October, 1897, the plaintiff called on the defendant's agent in the city of New York and applied for the exclusive control of the facilities of the defendant's steamers for the transportation of cattle for the period of one year. He stated to the agent that he had already secured an option on the American Transport Line for the same service for a similar period ; that he was acting as broker for the people interested in the cattle market in England and that to make the plan or scheme of the plaintiff and his associates successful it was necessary that he should have control of the cattle transportation of both lines.   Thereupon negotiations were had concerning the terms and conditions of the proposed contract, which included a number of details, such as the length of notice to be given to the plaintiff of the proposed time of sailing of any steamer, the sum for which the cattle should be insured by the defendant, the erection of stalls, the carriage of the necessary feed for the cattle, the transportation of men to attend the cattle and their return to this country, demurrage for any delay in the sailing of the vessel caused by the shipper, compensation to the plaintiff in case after notice given there should be delay in sailing, and other incidents to which it is unnecessary to specifically refer.   According to the plaintiff's testimony in these oral negotiations all the details and conditions necessary to a contract were agreed upon except the price to be paid for the transportation of the cattle and the payment of brokerage for the charter party.   As to these matters the agent stated that he would telegraph to his prin-

cipals in Europe before giving the plaintiff a definite answer. In this state of the negotiations the plaintiff went to Chicago, and while he was there the following telegraphic correspondence passed between the parties:

"NEW YORK, *Oct. 25th,* 1897.

"W. W. BRAUER,

"Auditorium Annex, Chicago:

"Am ready to close all White Star steamers carrying cattle December 1st, 1897, to November 30th, 1898, inclusive, 42/6 insured. Maximum numbers our call subject to your giving satisfactory guarantee, Liverpool, November 15th, but decline positively, pay brokerage subject to reply by noon to-morrow (Tuesday).

"(Signed) H. MAITLAND KERSEY."

"Dated CHICAGO, Ill., *Oct.* 26.

"To H. MAITLAND KERSEY,

"White Star Line, Broadway:

"Accept your proposition, confirm closing your boats for one year.

"BRAUER."

"Dated NEW YORK, *Oct.* 26.

"To W. W. BRAUER,

"Aud. Annex:

"Message received. Consider space closed.

"H. MAITLAND KERSEY."

On the plaintiff's return to the city of New York a few days after this correspondence he called on the defendant's agent and the latter prepared a written contract for the plaintiff to sign. Plaintiff declined to execute the proposed contract, claiming that its terms varied substantially from those agreed upon in the conversations between the parties. Defendant's agent insisted he must sign that or the negotiations would terminate. The plaintiff persisted in his refusal and thereupon the defendant repudiated any obligation in the matter. Thereafter the plaintiff brought this action for damages for the defendant's breach of contract. At the close of the evi-

dence the learned trial judge, in obedience to a decision of the Appellate Division made on a previous appeal in the action, dismissed the complaint on the ground that no completed contract had been entered into by the parties. This disposition of the case has been affirmed by the Appellate Division and an appeal is now taken to this court.

We very much doubt whether the ground on which the decisions of the courts below have proceeded can be sustained. If oral negotiations of the parties were sufficient to establish a binding contract we are inclined to the view that under the plaintiff's testimony the case would have been for the jury. He testified to an agreement upon all details sufficient to constitute a working contract. It is true that both parties expected that subsequently a formal written contract should be executed. But such an expectation or intent did not abrogate the force of the previous agreement as an obligatory contract. (*Pratt v. Hudson R. R. R. Co.*, 21 N. Y. 305; *Sanders v. Pottlitzer Bros. F. Co.*, 144 N. Y. 209; *Raubitschek v. Blank*, 80 N. Y. 480.) This doctrine the learned Appellate Division fully conceded but was of opinion that some of the terms of the agreement remained unsettled. This, as already said, could not be so held as a matter of law, but on the evidence presented a question of fact for the jury. It is unnecessary, however, to pursue the discussion as we think the alleged agreement which was not to be performed within the term of one year was void under the Statute of Frauds.

It is urged that the defendant is not in a position to raise this objection, the statute not having been pleaded. Ever since the decision in *Crane v. Powell* (139 N. Y. 379) the law has been settled in this state, whatever uncertainty there may have been on the subject before, that to avail himself of the defense of the Statute of Frauds the defendant must in a proper case plead the statute. It is to be borne in mind, however, that in the case now before us the plaintiff declared on a written contract and "the statute concerns oral contracts only; written contracts, of whatever nature, are untouched by its provisions." (Browne on Frauds, sec. 344a.) It is diffi-

cult to see how the defendant could plead that a written contract was not reduced to writing nor any note or memorandum thereof made in writing. If it be possible for such a plea to be true, it can be true only in the sense that it charges that the written contract was not made at all. This, however, the defendant has sufficiently pleaded, for it has specifically denied the allegation of the complaint that a written contract was executed. Proof by the plaintiff of an oral contract instead of a written contract did not constitute any such variance as required the court on the trial to dismiss the complaint. It did not change the cause of action, and if necessary the court could have amended the complaint to conform to the facts proved. But the extension of such a favor to the plaintiff could not in any respect deprive the defendant of its rights. Therefore, when the oral contract was proved either in lieu or in support of the written one declared on in the complaint, the defendant could properly raise the objection of the statute by a motion to dismiss or for the direction of a verdict.

Personally I should incline to the view that the telegrams between the parties are not sufficiently definite to enable a court to spell out a complete contract of any kind. The general rule is held by this court to be "that a note or memorandum sufficient to take a contract out of the operation of the Statute of Frauds must state the whole contract with reasonable certainty so that the substance thereof may be made to appear from the record itself without regard to parol evidence." ( *Ward* v. *Hasbrouck,* 169 N. Y. 407.) In *Drake* v. *Seaman* (97 N. Y. 230), a written memorandum signed by the defendant and accepted in writing by the plaintiff which stated the understanding between the parties to be that the plaintiff was to be paid $2,000 for the first year, $2,500 for the second year, and provided the increased sales warranted it, $3,000, was insufficient to take the case without the statute because it did not express what the plaintiff was to do in consideration of such payments. In *Mentz* v. *Newwitter* (122 N. Y. 491) a memorandum of the contract of sale was held insufficient because the name of the vendee did not appear therein.

At the same time parol evidence is admissible to explain the meaning of characters, marks and technical terms used in a particular business, which are unintelligible to persons not acquainted therewith, where such occur in a written instrument (*Dana* v. *Fiedler*, 12 N. Y. 40), and the cir· cumstances surrounding the parties also may be shown to explain its meaning. (*Hagan* v. *Domestic Sewing Machine Co.*, 9 Hun, 73.) Both the cases cited arose under the Statute of Frauds. But in neither did the parol testimony which was held admissible consist of oral negotiations between the parties, but related to the circumstances and the meaning in the trade of technical terms. The parol testimony in this case consists almost exclusively of the oral negotiations. The number and capacity of the White Star steamers, their sailing days, that they plied from New York to Liverpool, were all facts properly proved by parol to explain the meaning of the defendant's first telegram, that of October 25th. I am by no means so clear that 42/6 meant forty-two shillings and six pence sterling per head was proved by competent testimony. There was no proof of a usage in the trade that rates for transporting cattle were fixed in shillings and pence by the head. The explanation depends entirely on the conversations between the parties and in this respect differs from *Dana* v. *Fiedler*. What was to be the nature or subject-matter of the guaranty mentioned in the telegram can be explained only by similar testimony. However, I shall not attempt to further analyze the various conditions of the telegrams. Such an analysis might well provoke differences of opinion among ourselves, and is unnecessary as the plaintiff does not stand on the terms of the telegrams alone as constituting a complete contract. It is conceded that no reference whatever, direct or indirect, is to be found in the telegrams to some most important conditions of what the plaintiff contends to have been the real contract. The plaintiff was to have six days' notice of the time of the departure of the steamers and twelve hours' notice of the time when the cattle would be required to be alongside of the steamer. This was a matter

of moment, for the plaintiff's purchases of cattle were to be made in Chicago, and the cattle transported from Chicago to New York in time to properly pass the government inspection before being shipped on the vessels. In connection with this there were further provisions for delay or demurrage for which either party might be responsible. If the defendant failed to transport the plaintiff's cattle at the time specified it was obliged to pay fifty cents a head per day for every day the shipment was detained, while if the plaintiff detained a boat by failure to have his cattle ready for shipment he was to pay, according to his testimony, £80 per day as demurrage; according to the defendant's testimony, £90 per day. It was on these very provisions that the negotiations between the parties were ruptured. The defendant in its proposed written contract inserted £90 as the daily demurrage, and provided that the defendant might at its election sail its boats at the time fixed for their departure without waiting for the plaintiff's cattle, in which case the plaintiff should pay the freight as if the cattle had been shipped. It also excluded from its liability to pay for the expense of keeping detained cattle, cases where the delay was caused by latent defects in the machinery or hull of the vessel, strikes or labor stoppage. The plaintiff refused absolutely to accede to these conditions, but insisted on the terms of what he declares to have been the oral agreement between the parties. Therefore, if the telegrams are to be construed as constituting a contract between the parties, complete and exclusive in its terms, the plaintiff by his repudiation was just as much guilty of a breach as the defendant. Both parties equally contended that there were provisions additional and beyond those contained in the correspondence. There are provisions as to other matters, essential parts of the real contract, on which the telegrams are silent. The defendant was to transport free of cost one man to every twenty-five head to take charge of the cattle and to return free of cost such men to this country. The stalls on the ships were to be erected by the shipper. The shipper was to supply the feed which was to be carried

by the vessels free of charge, but excess of feed beyond that used, which might be sold in England, was to be paid for as freight. In fact, the learned counsel for the appellant in his brief enumerates many conditions of what he contends to have been the completed contract of the parties, none of which is to be found in the telegraphic correspondence. There is no evidence that these are governed by custom in the trade or can be implied as incidents to the contract, but they rest solely in the alleged oral agreement. Therefore, within the well-settled rules of law, the agreement for the breach of which the plaintiff seeks to recover was not valid and binding on the defendant. (*May* v. *Thomson*, L. R. [20 Ch. D.] 706 ; *Winn* v. *Bull*, L. R. [7 Ch. D.] 29.)

The judgment appealed from should be affirmed, with costs.

PARKER, Ch. J., O'BRIEN, BARTLETT, HAIGHT, VANN and WERNER, JJ., concur.

Judgment affirmed.