BERNHAN CHEMICAL AND METAL CORPORATION, Respondent, Appellant, *v.* SHIP-A-HOY, LTD., INC., Appellant, Respondent.

First Department, March 24, 1922.

Sales — action for failure of seller to deliver carload of sugar — counterclaim for refusal of buyer to accept sugar which fails to allege compliance with Personal Property Law, § 132, is fatally defective — counterclaim based on resale of sugar insufficient in absence of allegation that buyer had been in default in payment for unreasonable time — defenses — Statute of Frauds must be pleaded affirmatively in absence of allegations of facts showing compliance therewith — denials in answer of allegations not in complaint have not effect of affirmative allegations — payment is affirmative defense — proper contents of answer — action against buyer for refusal to accept delivery of saccharine — defense that seller fraudulently represented that under laws of United States and all States and foreign countries saccharine might be used for contemplated purpose is not insufficient in law — foreign law question of fact — statements as to law of this State and of United States mere expressions of opinion — counterclaim alleging buyer damaged by purchasing glucose and saccharine based on seller's fraudulent representations not of character allowed by Code of Civil Procedure.

A counterclaim to a cause of action by a buyer against a seller for failure of the seller to deliver a carload of sugar, which fails to allege tender of performance or readiness and willingness to perform on the part of the seller, and also fails to allege any request by the seller that the buyer take delivery of the sugar and that the buyer did not, within a reasonable time after such request, take delivery, is fatally defective under section 132 of the Personal Property Law. Moreover, a resale of the sugar by the seller, alleged in said counterclaim, can form no basis of a claim against the buyer, where the counterclaim fails to show compliance with section 141 of the Personal Property Law in respect to reselling only after the buyer has been in default in payment for an unreasonable time.

In the absence of an allegation in the complaint that the contract sued upon was or was not in writing, the Statute of Frauds must be pleaded as an affirmative defense.

Accordingly, the defense of the Statute of Frauds is not raised in an action by a buyer against a seller for failure of the seller to deliver a carload of sugar, where it appears that there is no allegation in the complaint that the contract of sale was or was not in writing, and the defense merely denies that any part of the sugar was delivered to or accepted by the buyer, that anything was given in earnest by the buyer to bind the contract, or in part payment thereof, and that any note or memorandum in writing was signed by the seller or its agent, and alleges that the contract is unenforcible because of the provisions of section 85 of the Personal Property Law, and it further appears that none of the allegations so denied is to be found in the complaint, for denials of allegations not found in the complaint will not take the place of affirmative allegations of that which, if true, would defeat plaintiff's recovery.

*It seems,* that while the rules of pleading require a plaintiff to allege non-payment of a claim sued for, payment is an affirmative defense to be pleaded and proved by a party claiming such defense.

An answer may properly contain only denials of facts which are alleged in the complaint, and allegations of facts which are not so alleged, but which the defendant states as new matter constituting his defense or counterclaim.

A defense to a cause of action by a seller against a buyer for the refusal of the buyer to accept delivery of a quantity of saccharine, that the seller fraudulently repre-

sented that under the laws of the United States and all the States and foreign countries saccharine might be used for the purpose intended by the buyer, thus inducing the buyer to make the contract of sale, is not demurrable as insufficient in law, on the ground that the representations were merely expressions of opinion as to questions of law, for the law of a foreign country is a question of fact, and, therefore, the representations of the seller as to such foreign law were representations of fact.

*It seems*, however, that representations concerning the existing law of this State and of the United States are not statements of fact, but merely expressions of an opinion, as every man is charged with knowledge of the law of his own State and of the nation.

A counterclaim to such a cause of action alleging that the buyer had been damaged by purchasing a large quantity of *glucose* and saccharine, having made such purchases relying on the fraudulent representations of the seller that under the laws of the United States and of all the States and foreign countries said commodities could be used for the purpose within the contemplation of the parties, cannot be interposed, for it does not appear that the matters therein alleged arose out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or that it is in any way connected with the subject of the action, or that such cause of action existed at the time of the commencement of the action.

Smith and Greenbaum, JJ., dissent in part.

Appeal by the defendant, Ship-A-Hoy, Ltd., Inc., from so much of an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 22d day of September, 1921, as sustains plaintiff's demurrer to the defenses in the 4th, 5th and 6th paragraphs of the amended answer, and to the counterclaim set forth in the 7th paragraph of the amended answer.

Appeal by the plaintiff, Bernhan Chemical and Metal Corporation, from so much of said order as overrules plaintiff's demurrer to the counterclaim in the 1st paragraph of the amended answer and to the defense in the 3d paragraph thereof.

*Nordlinger & Riegelman* [*H. H. Nordlinger* of counsel; *Samuel H. Hofstadter* with him on the brief], for the plaintiff.

*William W. Armstrong* of counsel, for the defendant.

Merrell, J.:

The parties have served cross notices of appeal from an order of the Supreme Court, sustaining in part and overruling in part plaintiff's demurrer to certain defenses and counterclaims contained in the second amended answer of the defendant. From the part of the order sustaining plaintiff's demurrer the defendant has appealed, and from the part of the order overruling said demurrer the plaintiff appeals.

In its complaint the plaintiff attempts to set forth causes of action arising out of three business transactions between the parties. The plaintiff alleges that on or about June 24, 1920, the parties entered into a contract whereby the defendant agreed to sell and

deliver to the plaintiff, and the plaintiff to purchase and receive, two carloads of seventy per cent corn sugar, f. o. b. Rochester, N. Y., where defendant was doing business. The first carload was to contain 600 bags of 112 pounds each, and the second carload was to contain 500 bags of 112 pounds each. The agreed purchase price was seven and three-quarters cents per pound. It was further agreed in and by said contract between the parties that the plaintiff should establish a letter of credit at a bank in Rochester, making the same available against shipping documents, and that shipments should be promptly made by the defendant in accordance with plaintiff's shipping instructions and that the plaintiff should place the same free on board railroad cars at Rochester. Alleging due performance of said contract on its part and that it duly and promptly gave shipping instructions covering said merchandise, and duly and promptly opened the letter of credit covering the purchase price thereof, the plaintiff further alleges that on or about July 2, 1920, the defendant shipped the first carload of 600 bags in accordance with plaintiff's instructions and received payment therefor, and that on or about the same date the defendant requested that plaintiff extend the time limit of the credit covering the second car of 500 bags, and that, although not obligated so to do under the terms of said contract, the plaintiff did accordingly extend the credit to July 15, 1920. Plaintiff further alleges in its first cause of action that, although frequently requested so to do, the defendant wholly failed and refused to deliver the second car of 500 bags and wholly repudiated its obligation to make delivery thereof, and declared that it intended not to deliver such second car. Alleging that the plaintiff was at all times ready, able and willing and duly offered to receive said second car of corn sugar and pay for the same, the plaintiff alleges that by reason of the aforesaid facts it suffered damages in the sum of $5,000, no part of which has been paid, although duly demanded.

As to this cause of action the defendant answered, admitting the making of the contract for the two carloads of sugar, as alleged in the complaint, and that plaintiff would establish a letter of credit with a bank in the city of Rochester to cover such purchase, and that the first carload of said sugar, containing 600 bags, was delivered and paid for. But the defendant denied in its answer that the terms of such agreement were otherwise as alleged in the complaint or are fully stated therein, and as a defense thereto the defendant alleged that during the negotiations for the sale and purchase of said sugar preceding the making of said contract, the plaintiff had inspected such corn sugar at the city of Rochester, and that by

the terms of such agreement such corn sugar was to be delivered f. o. b. Rochester as it was, without further inspection, and shipped promptly to the plaintiff at New York city, and that such letter of credit agreed to be furnished by plaintiff was to be promptly established without condition other than compliance with such agreement; and that, although plaintiff well knew that time was of the essence of such agreement, it failed to promptly establish such letter of credit, and was unwilling to accept shipment of the second car of such corn sugar to New York city as agreed, and requested the defendant to ship the same to the city of Detroit, Mich.; that at that time embargoes existed against such shipments to said city of Detroit, to the knowledge of the plaintiff, and that defendant was unable to secure transportation thereof in accordance with plaintiff's request, of which it duly notified the plaintiff; that the market price of such corn sugar was then rapidly falling, as plaintiff well knew, and that notwithstanding plaintiff's failure to procure such transportation to the city of Detroit, and defendant's inability so to do and such falling market, plaintiff failed and refused to accept shipment of such second carload of corn sugar to the city of New York, as agreed. As and for a counterclaim to said first cause of action the defendant, in its said answer, alleged that the parties were domestic corporations, and realleged, by reference, the preceding allegations of the answer, and further alleged that, upon plaintiff's failure and refusal to so accept such second carload of corn sugar, defendant duly notified plaintiff that, unless it accepted the same, defendant would sell the same for plaintiff's account, which it did, upon plaintiff's failure to accept said sugar, at a loss and to defendant's damage in the sum of upwards of $1,000.

The plaintiff demurred to such counterclaim set forth in defendant's answer for insufficiency. The court below, with evident reluctance, overruled said demurrer, and held the pleading, in that respect, good.

With respect thereto, in the opinion of the learned court below, it is suggested that the counterclaim " is pleaded in such bad form that it raises a serious doubt whether a cause of action is set forth." The court, however, deeming the defects to be of form rather than of substance and curable by simple amendment, " with some hesitation," overruled plaintiff's demurrer thereto. It seems to me that the omissions in defendant's attempted plea of counterclaim to plaintiff's first cause of action are more than mere informalities and are so substantial as to sustain plaintiff's demurrer thereto. Boiled down, the allegations of defendant's said counterclaim are, in effect, that on or about June 24, 1920, the defendant agreed to sell and

deliver to plaintiff, and plaintiff agreed to purchase and pay for, the two carloads of corn sugar, upon a letter of credit covering such purchase being established at Rochester by plaintiff; that the sugar was to be delivered f. o. b. Rochester and accepted without further inspection, and shipped promptly to plaintiff at New York city, and that plaintiff was to furnish the letter of credit promptly, without any condition, save prompt compliance by defendant with the agreement; that plaintiff failed promptly to establish such letter of credit and was unwilling to accept shipment to New York of the second car of said corn sugar, but requested that defendant ship the same to Detroit, Mich.; that, to pla ntiff's knowledge, there was an embargo against shipments to Detroit, and defendant was unable to comply with plaintiff's request and so notified the plaintiff; that the market price of such sugar at that time was rapidly falling, as plaintiff well knew, and that plaintiff failed and refused to accept shipment to New York and that thereupon defendant notified plaintiff that it would resell the sugar for plaintiff's account, which, upon plaintiff's failure and refusal to accept the same, it did sell at a loss of $1,000, for which damages defendant asked a recovery against plaintiff. Such alleged right of recovery on defendant's part is based upon the provisions of section 132 of the Personal Property Law (as added by Laws of 1911, chap. 571). That section reads as follows:

" § 132. Buyer's liability for failing to accept delivery. When the seller is ready and willing to deliver the goods, and requests the buyer to take delivery, and the buyer does not within a reasonable time after such request take delivery of the goods, he is liable to the seller for any loss occasioned by his neglect or refusal to take delivery, and also for a reasonable charge for the care and custody of the goods. If the neglect or refusal of the buyer to take delivery amounts to a repudiation or breach of the entire contract, the seller shall have the rights against the goods and on the contract hereinafter provided in favor of the seller when the buyer is in default."

The statute thus defines the buyer's liability for failure to accept delivery " when the seller is ready and willing to deliver the goods, and requests the buyer to take delivery, and the buyer does not within a reasonable time after such request take delivery of the goods." The counterclaim here under consideration is fatally defective in that nowhere therein does the defendant allege any tender of performance nor the readiness or willingness to perform on its part. (Williston Sales, § 448; *Ziehen* v. *Smith,* 148 N. Y. 558; *Pope* v. *Terre Haute Car & Mfg. Co.,* 107 id. 61; *New York Utility Co., Inc.,* v. *Williamsburg S. L. Co., Inc.,* 187 App. Div. 110, 115;

*Siegel* v. *Ward & Co.,* 177 id. 487; *British Aluminum Co., Ltd.,* v. *Trefts,* 163 id. 184; *Gross* v. *Ajello,* 132 id. 25.)  Moreover, the defendant has failed to allege any request by the seller that the buyer take delivery of the sugar, or that the buyer did not " within a reasonable time after such request take delivery of the goods." All of these elements must necessarily have existed and should have been alleged by it in order to properly charge the plaintiff with liability for failure to accept delivery of the sugar.

Furthermore, as to the resale of the sugar, which the defendant, in its said counterclaim and as a basis for its claim against plaintiff, alleges it made for the plaintiff's account, such right to resell rests solely upon the provisions of section 141 of the Personal Property Law (as added by Laws of 1911, chap. 571).  Under the last-mentioned statute the defendant, under the circumstances of this case, could only resell " where the buyer has been in default in the payment of the price an unreasonable time."  (Pers. Prop. Law, § 141; Williston Sales, § 550.)  In the said counterclaim defendant failed to allege how long, if at all, the plaintiff had been in default in paying for the goods.  There was no allegation of the buyer's default for an unreasonable time, and there was no allegation of any fact from which the buyer's default for an unreasonable time could be determined.  Thus, upon its face, the alleged counterclaim is insufficient, as it shows that the defendant, by its own acts, for which it pleads no authority in law, disabled itself from performance of the contract.  Therefore, the said counterclaim is deficient in the several particulars stated.  Inasmuch as the said alleged counterclaim is contained in the second amended answer of the defendant, it must be assumed that the defendant has now pleaded all of the facts in support of its claims, and the defendant is hardly entitled to the indulgence of a fourth excursion into the realms of pleading in order to state affirmative facts as a basis for its counterclaim.

For a so-called third cause of action alleged in the complaint, the plaintiff alleges that on or about July 16, 1920, the plaintiff and defendant entered into a contract whereby it was agreed that the plaintiff should purchase and receive and the defendant should sell and deliver a carload of 600 bags of seventy per cent corn sugar chips in one hundred and twelve pound bags, at seven cents per pound, and that by the terms of such agreement the defendant should make shipment of said merchandise from its factory by early August, 1920, delivering the merchandise free on board cars at Rochester, and that payment should be made, cash against sight draft, with bill of lading attached; that plaintiff duly performed all the conditions of said agreement on its part to be performed,

and was at all times ready, able and willing and duly offered to accept and pay for the said merchandise in accordance with the provisions of said agreement, but that the defendant, although frequently requested so to do, failed to make delivery of such merchandise and did not notify plaintiff of its readiness to receive shipping instructions for said merchandise, but, on the contrary, wholly failed, neglected and refused to make such delivery, all to plaintiff's damage in the sum of $5,000, payment of which was duly demanded and refused by the defendant.

As to this cause of action, the defendant, in its amended answer, *denied* that any part of such carload of corn sugar was delivered by it or accepted by the plaintiff; that anything was given in earnest by the plaintiff to bind such contract, or in part payment thereof or that any note or memorandum in writing of such contract was signed by defendant or by its agent in its behalf, and that such alleged contract was, therefore, void and unenforcible by action, as provided in section 85 of the Personal Property Law. To such defense plaintiff likewise demurred for insufficiency. The court overruled plaintiff's said demurrer, and from so much of the order as overruled said demurrer in that respect plaintiff has appealed.

Section 85 of the Personal Property Law (as added by Laws of 1911, chap. 571), upon disregard of the provisions of which defendant, in its third defense to plaintiff's third cause of action, seeks to defeat plaintiff's right of recovery, is the codification into the Sales of Goods Act, which is article 5 of the Personal Property Law, of the former Statute of Frauds. (See Laws of 1911, chap. 571, §§ 2, 3; Consol. Laws, chap. 41 [Laws of 1909, chap. 45], § 31, subd. 6; Gen. Laws, chap. 47 [Laws of 1897, chap. 417], § 21, subd. 6; R. S. pt. 2, chap. 7, tit. 2, §§ 3, 8; 2 R. S. 136, §§ 3, 8.) The section, so far as pertinent to the pleading here under review, reads as follows:

" § 85. Statute of Frauds. 1. A contract to sell or a sale of any goods or choses in action of the value of fifty dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

It was the evident purpose of the pleader to set up said statute as a bar to plaintiff's recovery of the contract price of the carload of corn sugar chips, but, upon analysis, the allegations of the answer will be found quite inadequate for that purpose. Indeed, the paragraph of the answer in question contains no affirmative

allegation of any fact. It consists entirely of *denials* of what is not alleged in the complaint. No one of the allegations which defendant *denies* is to be found in the complaint. The only denials authorized by the Code of Civil Procedure (§ 500, subd. 1) are general or specific denials of material allegations of the complaint controverted by the defendant, or of any knowledge or information thereof sufficient to form a belief. Subdivision 2 of the same section of the Code also provides that an answer must contain " a statement of any new matter constituting a defense or counterclaim, in ordinary and concise language without repetition." Within such narrow limits is an answering defendant restricted. (*Staten Island M. R. R. Co. v. Hinchliffe,* 170 N. Y. 473, 482.) Therefore, an answer may properly contain only *denials* of facts which are alleged in the complaint, and *allegations* of facts which are not so alleged, but which the defendant states as new matter constituting his defense or counterclaim. The so-called defense contained in said subdivision III of defendant's answer contains neither, and, therefore, failed to meet the Code requirements then in force. The 3d paragraph of the complaint fails to allege whether the alleged contract for the sale of the corn sugar chips was oral or in writing. The law is well established, in the absence of an allegation in the complaint that the contract sued upon was in writing, that the defense of the Statute of Frauds, to be effective to the defendant, must be pleaded as an affirmative defense. (*Brauer v. Oceanic Steam Navigation Co.,* 178 N. Y. 339; *Crane v. Powell,* 139 id. 379; *Bean v. Flint,* 204 id. 153, 162; *Marston v. Swett,* 66 id. 206.) Denials of allegations not found in the complaint are far different from affirmative allegations of that which, if true, would defeat plaintiff's recovery. An analogous distinction exists regarding a plea of payment. While the rules of pleading require a plaintiff to allege non-payment of a claim sued for, payment is an affirmative defense to be pleaded and proved by a party claiming such defense. In *Bremer v. Ring* (146 App. Div. 724) our Mr. Justice LAUGHLIN, writing for an unanimous court, said (at p. 725): " The authorities uniformly hold that it is necessary for the plaintiff in such an action to allege non-payment, but this is a mere rule of pleading, and for the reason that payment must be pleaded or proved as a defense the denial of such an allegation does not make it an issuable fact." (See, also, *Conkling v. Weatherwax,* 181 N. Y. 258; *Redmond v. Hughes,* 151 App. Div. 99, 102; *Posner v. Rosenberg, No. 2,* 149 id. 272, 277.)

The learned court below excused its action in overlooking the deficiency in the answer, which was apparently quite manifest to the court, upon the modern tendency of courts to liberally construe pleadings. Courts should not, we think, be quite so

liberal as to entirely disregard the fundamental rules of pleading as fixed by statute. The plaintiff's demurrer to said attempted defense of the Statute of Frauds should have been sustained.

The fourth, fifth and sixth causes of action, in each of which plaintiff alleges damages in the sum of $956.59, apparently relate to a single transaction, namely, the sale and delivery by the plaintiff to the defendant of 300 pounds of saccharine. In the so-called fourth cause of action contained in plaintiff's complaint plaintiff alleges that on or about June 3, 1920, the parties entered into a contract whereby it was agreed that the plaintiff should sell and deliver and the defendant should purchase and receive 300 pounds of saccharine at four dollars and seventy-five cents a pound, 100 pounds to be soluable Heydens and 200 pounds thereof to be insoluble Hoffman LaRoche; that by the terms of the agreement, payment therefor was to be made by sight draft attached to bill of lading, the defendant giving shipping instructions for the shipment of such merchandise. Plaintiff alleges that thereafter the defendant instructed the plaintiff to ship by express c. o. d., instead of by railroad, and that the parties agreed to modify said contract to provide for shipment by express c. o. d., the defendant agreeing to pay the express company the purchase price and express charges in cash against delivery of the merchandise. The plaintiff alleges due performance in its part of the contract, and that it promptly shipped said saccharine in accordance with said agreement, and as modified, but that the defendant wholly without cause and justification, wrongfully failed, neglected and refused to accept said merchandise or to pay for the same, but, on the contrary, wholly repudiated its obligation, and notified the plaintiff that it did not intend to carry out the same, and that by reason of defendant's said wrongful refusal to receive and accept said merchandise, the plaintiff was compelled to pay storage and express charges thereon, amounting to thirty-one dollars and fifty-nine cents, and all to plaintiff's damage in the sum of nine hundred and fifty-six dollars and fifty-nine cents, which plaintiff has duly demanded of the defendant and payment thereof has been refused.

For a so-called fifth cause of action the plaintiff alleges, with reference to said saccharine, that on or about July 25, 1920, the plaintiff and the defendant agreed that the plaintiff might sell same for the account of the defendant, holding the defendant liable for any loss or damage sustained by the plaintiff, and that defendant would pay to the plaintiff any such loss or damage; that on or about November 1, 1920, the plaintiff resold the said saccharine for the sum of $500; that plaintiff was thereby damaged

in the sum of $956.59, the payment of which, although frequently demanded, was refused by the defendant.

For a so-called sixth cause of action, the plaintiff alleges that on or about June 3, 1920, the plaintiff sold and delivered to the defendant certain goods, wares and merchandise of the agreed price and reasonable value of $1,425; that although frequently duly demanded, the said defendant has not paid plaintiff said sum or any part thereof, except that the plaintiff, in the exercise of its seller's lien, resold said merchandise for the sum of $500 and by reason thereof plaintiff was damaged in the sum of $956.59.

As before stated, it is quite apparent that the plaintiff is complaining, in the fourth, fifth and sixth alleged causes of action set forth in its complaint, only for damages growing out of a single saccharine transaction. This is borne out by the demand for judgment in the complaint, which is for the sum of $10,956.59, said sum evidently being made up of the two items of $5,000 each growing out of the alleged breach of contract in relation to the second carload of corn sugar and the carload of corn sugar chips, and the sum of $956.59, being damages alleged to have been suffered as the result of defendant's breach of the contract growing out of the sale and delivery of the saccharine.

In its amended answer the defendant, for defense to plaintiff's said fourth cause of action, alleged that prior to the purchase of such saccharine by defendant, the plaintiff well knew that it desired to use the same in the manufacturing and sale and shipment into both intrastate and interstate commerce in this and other States throughout the United States and foreign countries of a food product or beverage for human consumption; that, for the purpose of inducing defendant to purchase the same, plaintiff falsely and fraudulently represented to it that the use of such saccharine was lawfully permissible in such manufacture, sale and shipment of such a product in this and all other States and under Federal laws; that it was not forbidden by Federal law or the laws of any State or foreign country; that although there had been litigation on the subject, it had been so finally determined by the decisions of courts of competent jurisdiction in this and other States and foreign countries and in the Federal courts in proceedings brought by public authorities to prevent the use by manufacturers of such saccharine in the manufacture, sale and shipment of such products; that plaintiff possessed the legal evidence to establish the truth of such representations and a legal defense in any such proceeding, and copies of such decisions, and would furnish the same to defendant upon request and guarantee and indemnify defendant against loss or damage from such use of said saccharine;

that, induced by such representations and relying thereon, defendant purchased such saccharine for such purpose, and that, before the receipt thereof from plaintiff, defendant discovered the falsity of such representations, so notified plaintiff and refused to accept delivery of such saccharine or to pay therefor.

In the 5th and 6th paragraphs of its said answer, the defendant, for defense to the fifth and sixth alleged causes of action, respectively, set forth in plaintiff's complaint, repeated, by reference, the denials and allegations made in its said answer as a defense to plaintiff's fourth alleged cause of action.

The plaintiff demurred separately to the alleged defenses of fraud and false representation contained in the 4th, 5th and 6th subdivisions of said answer on the ground, as to each, that the said alleged defense was insufficient in law on the face thereof.

The learned court sustained plaintiff's said demurrer to the defenses alleged in the 4th, 5th and 6th subdivisions of said answer upon the ground that such defenses were based on alleged false representations as to the law of this State and other States and of the United States, which representations the court below held to be merely the expression of an opinion upon a question of law and not as to a fact, and were, therefore, not actionable. In so far as the alleged fraud and deceit alleged and set forth in said answer is based upon representations alleged to have been made by plaintiff concerning the law of the State of New York and of the United States the learned court below was undoubtedly correct in holding that such representations were not as to any fact, but as to the existing law of this State and of the United States, and no more than the expression of an opinion, and that, although false, no action would lie thereon. Every man is charged with knowledge of the law of his own State and of the Nation. (Williston Cont. § 1495; *Upton* v. *Tribilcock,* 91 U. S. 45). But in the answer here under review the defendant not only alleges fraudulent misrepresentation by the plaintiff as to the permissibility of the use of saccharine under the domestic law, but that its use was not forbidden by the laws of any State or foreign country, and that, although there had been litigation over its use, its lawfulness had been finally determined by the decisions of courts of competent jurisdiction in other States and foreign countries in proceedings brought by public authorities to prevent its use by manufacturers in the manufacture, sale and shipment of food products containing saccharine; and that the plaintiff possessed the legal evidence to establish the truth of such representations and a legal defense in any such proceeding and copies of such decisions, and would furnish the same to the defendant upon request, and would guarantee

and indemnify defendant against loss or damage from the use of such saccharine. And the defendant alleges that, induced by plaintiff's said representations and relying thereon, defendant purchased such saccharine for its manufacturing purposes, and that, before the receipt thereof from plaintiff, defendant discovered the falsity of such representations, so notified the plaintiff and refused to accept delivery thereof or to pay therefor. Thus the plaintiff is charged with representation as to the law of sister States and of foreign countries. Foreign law is a matter of fact and, therefore, the representations of the plaintiff with reference to such foreign law were representations as to a fact. (*Van Slochem* v. *Villard,* 207 N. Y. 587; *Hanna* v. *Lichtenhein,* 225 id. 579.) If the defendant, in reliance upon such false representations and promises, was induced to enter into the contract, it could properly, on discovery of the fraud, allege the same in defense of its repudiation of the contract. It follows, therefore, that the allegations contained in said 4th, 5th and 6th subdivisions of the answer were good on demurrer, and that plaintiff's demurrer thereto should have been overruled.

The plaintiff also demurred to the counterclaim set forth in subdivision VII of the defendant's answer. Therein the defendant, " as and for a further counterclaim to each of the fourth, fifth and sixth causes of action alleged by plaintiff," alleges that the goods, wares and merchandise referred to and described in the said sixth alleged cause of action are the same as the saccharine referred to and described in said alleged fourth cause of action. And the defendant further alleges in the said 7th subdivision of its answer that the parties are domestic corporations, and that shortly prior to June 3, 1920, the date of the alleged purchase of the saccharine referred to in plaintiff's causes of action, plaintiff learned that defendant intended to manufacture and sell and ship into both intrastate and interstate commerce in this and other States throughout the United States and foreign countries a food product or beverage for human consumption, in which it would need a large quantity of sweetened syrup; that for the purpose of inducing defendant to purchase from the plaintiff glucose sweetened with such saccharine so referred to in said causes of action for use as such sweetened syrup for the manufacture of such product, plaintiff falsely and fraudulently represented to defendant that the use of such saccharine-sweetened glucose for such purpose was lawfully permissible in such manufacture, sale and shipment of such product in this and all other States and under Federal laws, and was not forbidden thereby or under the laws of any foreign country, and did not render such products

subject to seizure or confiscation under the laws of any State or of the United States or of any foreign country; that although there had been litigation on the subject it had been so finally determined by the decisions of courts of competent jurisdiction in this and other States and foreign countries and by the Federal courts in proceedings brought by public authorities to prevent the use by manufacturers of such sweetened glucose in the manufacture, sale and shipment of such products; that plaintiff had the legal evidence to establish the truth of such representations and a legal defense in any such proceeding and copies of such decisions in its possession, and would furnish the same to defendant upon request and guarantee and indemnify defendant against all loss or damage from the use of such saccharine-sweetened glucose in such products; that, induced by such representations and relying thereon, defendant purchased such saccharine from plaintiff and also purchased from plaintiff a large quantity of glucose and paid plaintiff therefor, which defendant sweetened with such saccharine and used as such a sweetened syrup in the manufacture, shipment and attempted sale, as aforesaid, of such product; that soon after the same was so made and offered for sale and shipped into this and other States to customers of defendant and purchasers thereof, the same was seized and confiscated by Federal authorities and the authorities of other States and prosecutions instituted against defendant for such shipment and sale thereof in the Federal courts and the courts of other States; that defendant thereupon advised plaintiff of such seizures, confiscations and prosecutions, and asked plaintiff to furnish it the evidence upon which to defend such proceedings and copies of such decisions establishing defendant's lawful authority to use such saccharine-sweetened glucose in such product, which plaintiff wholly failed to do or to furnish; and that defendant was unable to defend such proceedings or prevent the seizure or confiscation of such products, and was thereupon obliged to procure the return to it of such products and pay the costs and expenses incurred in such seizures, confiscations and prosecutions and the transportation charges and penalties imposed therefor; and that all such products in which such saccharine-sweetened glucose had been so used by defendant thereupon became and have ever since remained worthless and unsalable; and that plaintiff has wholly failed to indemnify defendant for any of such costs, expenses or loss in any manner, although defendant has duly demanded of plaintiff that it should so do, to its damage in the sum of upwards of $12,000.

The grounds of plaintiff's demurrer to said alleged counterclaim were: *First*, that said counterclaim was not of the character specified

in section 501 of the Code of Civil Procedure, in that it did not set forth a cause of action arising out of the contract or transaction set forth in the complaint and the foundation of the plaintiff's claim, and that it was not connected with the subject of the action, and that it did not set forth a cause of action on contract existing at the time of the commencement of this action; *second*, that the alleged counterclaim did not state facts sufficient to constitute a cause of action. (See Code Civ. Proc. § 495.) The learned court below sustained plaintiff's demurrer to said counterclaim upon the ground that the allegations of misrepresentation therein contained were likewise as to a statement of an opinion, and, therefore, not actionable. For reasons hereinbefore stated, we are unable to concur in the opinion of the court below. But it seems to us that the trial court overlooked the real ground of demurrer to said counterclaim. It clearly appears upon the face thereof that the transaction therein alleged did not arise out of the contract or transaction upon which the plaintiff complained, nor was it connected with the subject of the action. In each of the fourth, fifth and sixth causes of action the plaintiff seeks to recover damages for defendant's breach of contract for the sale of 300 pounds of saccharine, whereas, in the 7th subdivision of defendant's answer, the defendant attempts to allege a cause of action for damages which it claims to have suffered by reason of the false representations of the plaintiff, whereby the defendant was induced to purchase from the plaintiff, not only saccharine, but a large quantity of glucose, for which the defendant paid the plaintiff, and which saccharine the defendant used in sweetening glucose, and which it also used in the manufacture, shipment and attempted sale of its product. This clearly was an entirely different transaction from that alleged in the complaint and in the other subdivisions of defendant's answer. It nowhere appears in the 7th subdivision of defendant's answer that the matters therein alleged arose out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, nor does it appear therefrom that the alleged counterclaim is in any manner connected with the subject of the action. In so far as defendant's said counterclaim may be construed as stating a cause of action upon contract, it nowhere appears therefrom that such cause of action on contract existed at the commencement of the action. The fact that concededly the defendant refused to accept or pay for the 300 pounds of saccharine for which the plaintiff seeks to recover, and, hence, never received the same, furnishes a conclusive answer to the contention of the defendant that the allegations contained in said counterclaim relate to a cause of action arising out of the contract set forth in the complaint. Evidently

it was quite another transaction than that upon which the plaintiff seeks to recover.

I am, therefore, of the opinion that the said alleged counterclaim was not of the character specified in section 501 of the Code of Civil Procedure, and, to the extent that the order appealed from sustained plaintiff's demurrer thereto, said order should be affirmed. With that exception, the order appealed from should be reversed, without costs to either party as against the other. The defendant, upon the usual terms, should have leave, if so advised, to serve a further amended answer herein, and the plaintiff, upon the usual terms, should have leave to reply to so much of defendant's answer as, in the 4th, 5th and 6th sections thereof, sets forth a defense to plaintiff's complaint.

CLARKE, P. J., and LAUGHLIN, J., concur; SMITH and GREENBAUM, JJ., dissent.

SMITH, J. (dissenting):

I dissent as to the counterclaim contained in the 7th clause of the answer.

GREENBAUM, J. (dissenting):

I also dissent as to said counterclaim, and am further of the opinion that the fourth cause of action is not sufficiently pleaded.

Order so far as it sustains plaintiff's demurrer to the counterclaim set forth in the 7th subdivision of the answer affirmed, and in other respects reversed, without costs to either party as against the other; with leave, upon the usual terms, to defendant to serve an amended answer, and to plaintiff to reply to so much of the answer as in the 4th, 5th and 6th sections thereof sets forth a defense to the complaint. Settle order on notice. ,