Blackmore-Danzig Co., Inc., Plaintiff, *v.* James A. Silsbee and Others, Defendants.

Supreme Court, Chemung County, December 30, 1927.

**Landlord and tenant — lease — correspondence and telegrams between parties did not satisfy Statute of Frauds (Pers. Prop. Law, § 31; Real Prop. Law, § 259).**

This is an action to compel the specific performance of an alleged agreement by the defendant to lease a building to the plaintiff. It appears from the evidence that the parties negotiated in reference to the lease for some time and that several letters passed between them and that the plaintiff finally telegraphed to the defendant in response to a telegram from the defendant, " Telegram received terms satisfactory meet you Engineers Club Wednesday 10 am." There is some dispute as to whether or not this telegram was received within the time limited. The evidence seems to indicate that the defendant did receive the telegram prior to the expiration of his alleged offer.

However, the letters and telegrams taken together do not constitute a sufficient writing to satisfy the Statute of Frauds (Pers. Prop. Law, § 31; Real Prop. Law, § 259), for the terms found within the correspondence do not show a complete contract. The negotiations as evidenced by the telegrams and letters show that the parties had not fixed on a definite term for the lease; that they had not met on the question as to who should bear the cost of alterations and improvements; that the amount of insurance was not specified and there was no provision as to the amount of rent that should be paid. The fact that the parties did not in their correspondence agree as to the improvements to be made shows that the correspondence was not sufficiently complete to constitute a contract.

The evidence taken as a whole indicates that the parties intended to negotiate further and enter into a final agreement in reference to the property and execute a lease which would embody all of the terms of that agreement. The fact that the transaction was still in the negotiatory stage is indicated by the telegram itself which did not state that the plaintiff accepted the terms proposed but merely that the terms were satisfactory, which indicates that all the plaintiff meant by the telegram was that the terms were satisfactory as a working basis under which the final agreement could be made.

Action to compel specific performance of agreement to lease. (F. & W. Grand 5-10-25 Cent Stores, Inc., eliminated as defendants by stipulation.)

*Mandeville & Personius*, for the plaintiff.

*Henry, Denton & McCann*, for the defendant Silsbee.

*Stanchfield, Collin, Lovell & Sayles*, for the defendant A. F. Stone.

Senn, J. On May 24, 1926, the plaintiff, the Blackmore-Danzig Co., Inc., was engaged in business conducting a chain of stores, one of them being at 107 East Water street, Elmira, N. Y., the Elmira store being known as the Gorton Co. The Gorton Co. was not a corporation or separate business entity but was the name

by which the plaintiff designated the Elmira store. The defendant James A. Silsbee was the owner of a store building at 111–113 East Water street in Elmira, N. Y. He was engaged in business in the borough of Brooklyn in the city of New York. The plaintiff's store and Silsbee's store building were on the same side of the street and only separated from each other by a theatre or theatre entrance. On May 24, 1926, Mr. Silsbee sent a letter addressed to the Gorton Co. asking if they would be interested in renting this store. To this letter the plaintiff, by George H. Danzig, replied asking for further information. On May 27, 1926, the defendant Silsbee wrote to the Blackmore-Danzig Co., 107 East Water street, stating that the lease on the entire building would expire on April 1, 1927, and offering to lease the same for $9,600 per year net, the tenant to pay taxes, insurance and all repairs or in case of a long lease he offered to accept $8,000 per year net for the first five years to offset any expense the tenant might have in the way of alterations, new equipment, etc.

After that there was some correspondence with reference to meeting to discuss the matter, and accordingly Mr. Danzig and Mr. Silsbee did meet at the Engineers Club in the city of New York on June 4, 1926, and discussed the question of a lease. On June 8, 1926, Mr. Silsbee again wrote to Mr. Danzig referring to their recent conversation and stating terms upon which he was willing to lease the premises. To this letter Mr. Danzig replied on June 9, 1926, in which he objected to some of the stipulations proposed in Mr. Silsbee's letter of the eighth. On June 11, 1926, Silsbee again wrote to Danzig modifying the terms of the proposed lease in some respects to meet Mr. Danzig's objections and offered to lease the premises for $7,200 per year net, interest, insurance, repairs and proposed improvements to be paid for by the tenant, but if the valuation of the property should, during the terms of the lease, exceed $72,000 the net rental was to equal ten per cent of the assessed valuation. On these terms and other considerations mentioned in the various letters he offered to let Mr. Danzig have the premises for twenty, twenty-five or thirty years. On June 14, 1926, Mr. Silsbee sent a telegram from New York, addressed to Mr. Danzig at Elmira, as follows· " Do you want store terms my last letter must know six PM to day wire absolute decision my expense." To which Mr. Danzig replied as follows: " Telegram received terms satisfactory meet you Engineers Club Wednesday 10 AM." Thereafter the defendant refused to enter into the lease as offered and leased the premises to the defendant A. F. Stone.

These telegrams were sent by Western Union Telegraph. Silsbee's message was delivered to the company at two-three P. M.

and the reply was delivered to the company at three-forty-five P. M. According to the telegraph company's notation the reply was delivered at four-twenty P. M., but the defendant Silsbee claims not to have received it until six-forty P. M. daylight saving time which would be five-forty standard time. The city of New York from which Silsbee sent his telegram and received the reply was under what is known as daylight saving time. The city of Elmira from which the reply was sent was under standard time and the Western Union Telegraph Company was operating on standard time. Silsbee did not at the time raise the question as to the reply not being timely. Under the circumstances I hold that the reply was sent and received in time.

The plaintiff claims that the letters and telegrams taken together constitute a lease in writing of the premises in question and that they, at least, form a sufficient agreement to lease. The defendants claim that the letters and telegrams are lacking in several essential elements necessary to a lease or agreement to lease and that if they are to be considered as such, the same is void under the Statute of Frauds. Defendants also claim that the letters and telegrams were only negotiatory and so considered by Danzig when he sent his last telegram.

Taking the letters and telegrams together, but omitting the portions eliminated by their own terms, they may be read substantially as follows:

James A. Silsbee offers to lease to the Blackmore-Danzig Co., Inc. his store at 111–113 East Water street in the city of Elmira, N. Y., occupied by W. B. Hallock & Bro., having a frontage of 44 feet on Water street and being 112 feet deep, including an alley and rear entrance, for the term of twenty, twenty-five or thirty years for $7,200 per year net; but if the assessed valuation during the term of the lease passes $72,000 the tenant is to pay a net rental equal to ten per cent of the assessed valuation. The lease is to begin on April 1, 1927, the date on which the present lease on the entire building will expire. The tenant is to pay all taxes and insurance which at present is about $2,600 per year and he shall also pay for all repairs. The building is to be leased as it is, alterations to be made by the tenant to suit its requirements, except that the candy store will be removed and show windows replaced by the landlord if the tenant so desires. The tenant to improve the building as proposed during the conversation between said James A. Silsbee and Mr. George H. Danzig. One of the considerations inducing the landlord to offer this lease is that he believes that the tenant and the said George H. Danzig are financially able to carry out their program, that their business warrants it,

and that he, the said James A. Silsbee, wants the building improved and believes that said George H. Danzig was entirely sincere and honorable in his conversation with said Silsbee.

On the trial Silsbee testified that in his conversation with Danzig, it was agreed that permanent improvements to the building, costing $30,000, were to be made by the tenant. Danzig denied this and claims that the only agreement was that any improvements made by the tenant would be for its own purposes and, therefore, to be paid for by it. He also denied that $30,000 or any other sum was mentioned as the agreed or probable cost of the improvements. In this there is a flat contradiction.

It seems to me that Silsbee's letter of June 8, 1926, forming a part of the agreement claimed, is strong corroboration of his contention. It contains three references to improvements, aside from repairs, to be made by the tenant. In one place it says: " you to improve the buildings on all floors to suit your requirements." Again, " you to improve the buildings as proposed during our conversation." And near the end of the letter: " I am offering it to you because   *   *   *   I want the building improved." It seems very clear that next to the money rent to be paid, the most important consideration moving Silsbee to offer the lease, was the valuable and much needed improvements proposed to be made to the building. In that respect, then, the letters and telegrams do not express all that was agreed.

There are other points wherein the correspondence bears intrinsic evidence of being still in the negotiatory stage, and so considered by Danzig. Silsbee's last letter says: " I will let you have it for twenty, twenty-five or thirty years." The answer was: " terms satisfactory, meet you at Engineers Club Wednesday."

It seems to me a strained and improbable construction of the letter to say it was an offer of a lease for twenty years, with an option to the tenant to renew at the end of that time for another five years with a further similar option at the end of twenty-five years. It is more probable that it was an optional offer of one of the three terms named, to be designated in the acceptance, if accepted.

In view of all the circumstances, there is some doubt as to whether Danzig's telegram of June fourteenth was intended to be an unqualified acceptance. If the lease proposed had been clear and explicit in all its terms, we might say that it was so intended even though the words " terms satisfactory " were not as direct and positive as to have said " terms accepted." But as it is, it rather tends to support the defendant's theory that the telegram only meant that the terms mentioned offered a satisfactory working basis upon which an agreement could be made.

Supreme Court, December, 1927.    [Vol. 131

Defendants point to other features of the correspondence as being too indefinite and not containing the whole agreement. Tenant is to pay all insurance on the building but it is not stated how much insurance shall be carried, or what shall be the rights of the parties in case of loss. There is no provision as to when the rent shall be payable. These objections could probably be dismissed on the ground that the law would require a reasonable amount of insurance to be carried, that in case of loss by fire the rights of the parties would be safeguarded by law and that the rent would, as matter of law be payable at the end of each year. Where a lease is drawn with ever so much care and providence, there is always a possibility of some contingency arising which has not been provided for and the lease would not be held void for that. The adjustment of difficulties arising subsequent to the making of the agreement to lease does not affect the validity of the completed agreement. (*Newburger* v. *American Surety Co.*, 242 N. Y. 134, 143.)

But the improbability that a landlord would want to leave such obvious contingencies to be settled by legal presumptions after all tends to give color to the claim that the parties themselves regarded the whole matter as still in the negotiatory stage.

There is no question but that the so-called Statutes of Frauds (Pers. Prop. Law, § 31; Real Prop. Law, § 259) apply to the alleged lease in this action. In other words, it is a contract which the law requires to be in writing.

" It is the obvious sense of the enactment that all the material parts of such a contract should be embraced in the writing. The policy which the act is intended to enforce arose out of a distrust of oral testimony, by which it was supposed that contracts    *    *    * might be falsely set up, or, when actually made, might be perverted or changed by fraud, perjury, or mistake. But if any of the material terms of the bargain could be left out of the writing and be supplied by parol, the greater part of the mischief intended to be guarded against would remain." (*Wright* v. *Weeks*, 25 N. Y. 153, 157.)

*Wright* v. *Weeks* (*supra*) was a case of a written contract to sell land, perfect except that the time of payment was stated to be on " the terms as specified." Parol evidence as to what these terms were was held to be incompetent. The reasons given are applicable here. It is true that in that case the verbal agreement was set up and claimed by the party seeking to enforce the written contract, while the plaintiff herein denies that there was any agreement outside of the letters and telegrams, but that does not differentiate the two cases in view of my finding of fact that there was an agreement by the plaintiff as a part consideration of the lease to

make extensive repairs to the building and that this is the agreement referred to in Mr. Silsbee's letter where he says: " you to improve the building as proposed during our conversation."

It has been held in so many cases that it may be deemed elementary, that the writing must include all the terms of the completed contract which the parties made. It is not sufficient that the note or memorandum *may* express the terms of a contract. It is essential that it shall completely evidence the contract which the parties made. (*Poel* v. *Brunswick-Balke-Collender Co.*, 216 N. Y. 310, 314. See, also, *Brauer* v. *Oceanic Steam Navigation Co.*, 178 N. Y. 339, 344, citing *Ward* v. *Hasbrouck*, 169 id. 407; *St. Regis Paper Co.* v. *Hubbs, etc.*, 235 id. 30; *Ansorge* v. *Kane*, 244 id. 395.)

*Newburger* v. *American Surety Co.* (242 N. Y. 134) is cited by plaintiff's counsel as a case resembling this, in which it was held that an agreement for a lease, covered by two letters written by the defendant's agent to the plaintiffs could be specifically enforced. In that case the plaintiffs were, and for a long time before the negotiations had been, tenants renting offices in defendant's building. The term of their lease was drawing to a close. The building was being reconstructed and tenants were to accept space on the sixth floor instead of the fifth, as theretofore. They had already moved to the sixth floor and taken the assigned place. It was a contract which had been acted upon and partially executed. The court held the agreement to be complete in its terms despite minor differences which might arise under it. It was not held that important provisions, actually agreed on, could be omitted.

In the instant case I would have no difficulty in finding that the letters and telegrams expressed and constituted a complete lease, that is, it could be a complete lease, but the difficulty is that they do not set forth the entire agreement that was actually made, viz., the agreement to make improvements. On this ground alone I would feel compelled to dismiss the complaint. It must also be dismissed on the ground that the correspondence, considered in its entirety, had not advanced beyond the negotiatory stage.

I am not holding, as urged by the defense, that the provision for a lease of twenty, twenty-five or thirty years rendered it void for uncertainty, that is, as not definitely stating the time the lease is to run. I have carefully examined the authorities cited to me as bearing on that proposition and am of the opinion that if the parties had deliberately signed a lease with such a provision, it could and perhaps would be held to give the lessee an option as claimed. The authorities cited by the plaintiff's attorney are to the effect that optional periods can be stated in a lease and that as a rule any doubt as to the option intended will be determined in favor of

the lessee. (*Powell* v. *Smith,* L. R. 14 Eq. Cas. 85; *Hersey* v. *Giblett,* 52 Eng. Reprint, 69; *Ferguson* v. *Cornish,* 97 id. 691; *Goodright* v. *Richardson,* 100 id. 678; *Dann* v. *Spurrier,* 127 id. 218, and many other cases cited.) This is no doubt the law, but does not do away with the proposition that under all the circumstances Silsbee is not likely to have intended to offer such a lease. I am convinced and find as a fact that the offer was not of a lease with an option as to the duration but an optional offer of one of the terms named, to be signified in the defendants' acceptance.

Again referring to Mr. Danzig's last telegram, " terms satisfactory, meet you Engineers Club Wednesday 10 A.M.," while it may have been intended as an acceptance, it certainly left room for a mental reservation and some chance for an argument at the proposed meeting at the Engineers Club, assuming that the purpose of the meeting was to formulate the lease. It would certainly have been more decisive to have said " terms accepted " or better still " terms accepted for — years " or " terms accepted with option to me of 20, 25 or 30 years."

I must find against the plaintiff on the grounds stated, viz., that the writings did not cover the entire agreement that was made and that there was no such meeting of the minds of the parties as constitutes a valid lease or agreement for a lease.

In view of this determination it is unnecessary to decide whether the defendant Stone had any notice of the lease claimed by the plaintiff.

The complaint must be dismissed, with costs.